[S. F. No. 3023.    Department Two.—October 7, 1903.]

LUCY M. SKELTON et al., Respondents, v. PACIFIC LUMBER COMPANY, Appellant.

Action for Death of Servant—Negligence of Master—Excessive Speed of Machinery—Act of Engineer under Orders of Superintendent.—Although a servant assumes the ordinary risks of his employment, including accidents from the negligence of fellow-servants, he does not assume the risk of the action of an engineer in causing the machinery to run at an excessive rate of speed, resulting in the breaking of a wheel, whereby he was killed, where the engineer was acting under the direct orders of the superintendent, who was acting as a vice-principal of the master in the giving of such orders.

Id.—Negligence of Vice-Principal—Character of Act.—It is the character of the act, and not the grade of the service, which fixes

the responsibility of the master in case of accident. If it be an act the duty for the performance of which belongs in law to the master, to whatever servant its performance may be delegated, his action is that of a vice-principal, and the master is liable for his negligence if the act is not performed with due care.

Id.—Verdict not Excessive.—A verdict in an action for the death of a servant, brought by his wife and children, in the sum of eighteen thousand dollars, cannot be deemed excessive, where, in addition to the proof of his value as a wage-earner, which might not alone justify the amount, there were other elements of damages to be considered by the jury, which they alone were competent to consider.

Id.—Negligence of Deceased—Modification of Requested Instruction.—A requested instruction, that if the jury believed that if the tool the deceased was grinding was caught between the rest and the wheel, thereby causing it to break, then their verdict should be for the defendant, which omits to consider that the catching of the tool may have been caused by the excessive speed, was rightly refused, and was properly modified by making the supposition depend upon the negligence of the deceased.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

J. N. Gillett, E. & D. Sevier, Van Ness & Redman, and E. S. Pillsbury, for Appellant.

The master was not responsible for the negligence of the engineer or of the superintendent in operating the machinery. (Civ. Code, sec. 1970; *Stevens* v. *Doe,* 73 Cal. 26; *Donnelly* v. *San Francisco Bridge Co.,* 117 Cal. 417; *Daves* v. *Southern Pac. Co.,* 98 Cal. 19, 26;[1] *Noyes* v. *Wood,* 102 Cal. 389; *McLean* v. *Blue Point etc. Co.,* 51 Cal. 255; *McDonald* v. *Hazeltine,* 53 Cal. 35; *Stevens* v. *San Francisco etc. R. R. Co.,* 100 Cal. 554; *Crispin* v. *Babbitt,* 81 N. Y. 516;[2] *McCosker* v. *Long Island R. R. Co.,* 84 N. Y. 77; *Kelly* v. *Jutte & Co.,* 104 Fed. 955; *Rose* v. *Boston etc. R. R. Co.,* 58 N. Y. 217; *Cullen* v. *Norton,* 126 N. Y. 1; *Meeker* v. *Remington etc. Co.,* 53 App. Div. 592; 65 N. Y. Supp. 1116; *Ewan* v. *Lippincott,* 47 N. J. L. 192;[3] *Moody* v. *Hamilton Mfg. Co.,* 159

[1] 35 Am. St. Rep. 133.        [3] 54 Am. Rep. 148, and note.
[2] 37 Am. Rep. 521.

Mass. 70;[1] *Albro* v. *Canal Co.*, 6 Cush. 75; *Jones* v. *Granite Mills*, 126 Mass. 84;[2] *Scott* v. *Sweeny*, 34 Hun, 292; *St. Louis etc. Ry. Co.* v. *Needham*, 63 Fed. 107.) The verdict is clearly excessive. (*Harrison* v. *Sutter Street Ry. Co.*, 116 Cal. 156; *Green* v. *Southern Pacific Co.*, 122 Cal. 563; *Wales* v. *Pacific Electric Motor Co.*, 130 Cal. 521; *Rudiger* v. *Chicago etc. Ry. Co.*, 101 Wis. 292, and cases cited; *Coley* v. *City of Statesville*, 121 N. C. 301; *McAdory* v. *Louisville etc. R. R. Co.*, 94 Ala. 272; *Chicago etc. R. R. Co.* v. *Bayfield*, 37 Mich. 205; *English* v. *Southern Pacific Co.*, 13 Utah, 407.[3])

Walter H. Robinson, C. L. Dam, and J. F. Coonan, for Respondents.

The negligent order of the superintendent in charge as vice-principal made the master liable. (*Beeson* v. *Green Mountain Gold Min. Co.*, 57 Cal. 20; *Brown* v. *Sennett*, 68 Cal. 230;[4] *Daves* v. *Southern Pacific Co.*, 98 Cal. 24;[5] *Elledge* v. *National etc. Ry. Co.*, 100 Cal. 291;[6] *Nixon* v. *Selby Smelting etc. Co.*, 102 Cal. 463; *Ryan* v. *Los Angeles etc. Co.*, 112 Cal. 253; *Callan* v. *Bull*, 113 Cal. 593; *Higgins* v. *Williams*, 114 Cal. 176; *Bessemer L. and Imp. Co.* v. *Campbell*, 121 Ala. 50;[7] *Gerrish* v. *New Haven Ice Co.*, 63 Conn. 9; *McElligott* v. *Randolph*, 61 Conn. 157;[8] *Eaves* v. *Atlantic Novelty etc. Co.*, 176 Mass. 369; *O'Brien* v. *Look*, 171 Mass. 36.) The damages are not excessive, some elements of damage being problematical, and for the jury alone to consider. (Code Civ. Proc., sec. 377; *Lange* v. *Schoettler*, 115 Cal. 391; *Redfield* v. *Oakland etc. Ry. Co.*, 110 Cal. 277.)

THE COURT.—This is a suit by the widow and minor children of one Skelton to recover damages for his death, which, it is claimed, resulted from the negligence of the defendant. The case was tried by a jury, and resulted in a verdict and judgment for the plaintiff in the sum of eighteen thousand dollars. The appeal is from the judgment, and from an order denying the defendant's motion for a new trial.

The case, omitting immaterial circumstances, may be briefly

---

[1] 38 Am. St. Rep. 396.
[2] 30 Am. Rep. 661.
[3] 57 Am. St. Rep. 772.
[4] 58 Am. Rep. 8.

[5] 35 Am. St. Rep. 133.
[6] 38 Am. St. Rep. 290.
[7] 77 Am. St. Rep. 17, and note.
[8] 29 Am. St. Rep. 181.

stated: The defendant is the owner of a large establishment for the manufacture of lumber, in the county of Humboldt, including the machine-shop where the accident occurred. Skelton—who at the time of his death was in the employ of the defendant, working in the shop—was killed by the breaking of an emery-wheel, a piece of which struck him on the head. The wheel, it is alleged in the complaint, was a safe piece of machinery while run at the usual rate of speed, but became unsafe at the high and extraordinary rate at which it was run by the defendant at the time of the accident, thereby rendering the shop an unsafe place. It appeared from the plaintiffs' evidence that the cause of the accident was as alleged, and that the excessive speed at which the wheel was running was the result of the express order of the defendant's superintendent, Douglas, who at and before the time of the accident was the general superintendent and manager of the defendant corporation, with full power over and exclusive charge of the work. There was evidence on the part of the appellant tending to show that the breaking of the emery-wheel was not due to the excessive rate of speed; but the effect of all the evidence upon this subject was to present a disputed question of fact for the jury to decide.

The accident occurred while Douglas, the superintendent, with Thompson, the foreman, was testing a new shake-machine. The machine was connected with the power to determine whether the power was sufficient and the machine safe. The engineer was ordered to shut off the engine, and then told to watch Thompson and Douglas and obey their orders. They directed the engineer to start up and to increase his speed. He did so. The other machines in the shop were not disconnected from the power during this experiment, and, consequently, with the increased power, themselves ran at increased speed. The final result was the breaking of the emery-wheel at which Skelton was working, and his death caused by the flying fragments.

A servant, of course, takes upon himself all the ordinary risks and perils of accident in the common course of the service in which he is engaged, including accidents occasioned by the negligence of fellow-servants, but in this particular instance the accident was not occasioned through the negligence

of a fellow-servant. It was not as though the engineer had
heedlessly permitted an excessive rate of speed. The engi-
neer himself was acting under orders, and those orders given
to him by the superintendent were in law the orders of the
defendant, because in the employment in which the accident
happened Douglas, the superintendent, was performing the
duty, not of the fellow-servant, but of the principal. In the
performance of all the duties which the law imposes upon the
principal, the agent to whom their performance is delegated,
by whatsover name he may be called, in so far represents and
stands in place of the principal, and the duty itself must be
performed with due care, or for a failure to exercise it the
principal is responsible. Nor does the principal's respon-
sibility end with the showing that he exercised due care in
the selection of the agent to whom he has delegated the duty.
It must further be proved that the agent himself with due
care performed his duty.

It must be taken as absolutely settled in this state that it
is not the grade of service which fixes the master's respon-
sibility in case of accident. It is the character of the act.
That is to say, if it be an act the duty for the performance of
which belongs in law to the master, if the performance be
delegated to the least of his servants or to the greatest, in
either case, and in any case, the master is responsible, unless
that act be performed with due care. The duties which a
master owes to his servants, and which duties he must per-
form, are to furnish suitable machinery and appliances with
which the service is to be performed, to keep them in order
and repair, to exercise ordinary care in the selection and re-
tention of sufficient and competent servants, and generally
to make such provision for the safety of employees as will
reasonably protect them against the dangers incident to their
employment; and if the act be one which it was the duty
of the employer to perform, and one of the servants negli-
gently performs it to the injury of another servant in the
same common employment, then the offending servant in the
performance of this duty acts as the representative or agent
of his employer, and the employer is responsible. These prop-
ositions, as we have stated, must be taken as absolutely settled
in this state. In support of them may be cited *Tedford*
v. *Los Angeles Electric Light Co.,* 134 Cal. 76; *Sanborn* v.

*Madera Flume Co.*, 70 Cal. 265; *Ingraham* v. *Moore*, 90 Cal. 420;[1] *Daves* v. *Southern Pacific Co.*, 98 Cal. 24;[2] *Nixon* v. *Selby Smelting etc. Co.*, 102 Cal. 463; *McNamara* v. *McDonough*, 102 Cal. 582; *Mullen* v. *California Horseshoe Co.*, 105 Cal. 77; *Ryan* v. *Los Angeles Ice etc. Co.*, 112 Cal. 254; *Callan* v. *Bull*, 113 Cal. 593; *Higgins* v. *Williams*, 114 Cal. 182; *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417; *Donovan* v. *Ferris*, 128 Cal. 54.[3]

That Douglas held and exercised this delegated authority from the defendant is clear from his own testimony. He says: "I am the general superintendent." "I see that the machinery of that shop is kept in repair." "I have to lay down the speed." "The duty to regulate the speed of the machinery all rests on me." "Anything I want done I tell them that I want it done then, or give instructions to the foreman." "He gets his orders from me." It was a part of the master's duty to see that the new shake-machine was a reasonably fit and safe appliance for the use intended. It was in the exercise of the legitimate duty of the master that Douglas upon the day of the accident was testing the machine. In making that test it was his duty to exercise due and reasonable care for the safety of the defendant's employees. His failure so to do was the defendant's failure, and under the evidence it was a fair question for the jury to determine whether in the exercise of that care the other machines in the shop should have been disconnected while the test was in process, and whether during the test the other machinery at which the men were working was run at a negligently excessive rate of speed.

Other objections urged by the appellant relate to the instructions, and to the amount of the verdict, which is claimed to be excessive. As to the latter point, the amount of damages awarded is apparently large, but, we are not prepared to say it was excessive. (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 502, 508, and cases cited; *Redfield* v. *Oakland Ry. Co.*, 110 Cal. 277; Code Civ. Proc., sec. 377.) The proof of the value of the deceased as a wage-earner might not alone justify the amount awarded; but there were other elements of damage to be considered by the jury, which they alone were com-

petent to consider. The objections as to the instructions are mainly disposed of by what has been said. But it is urged that the court erred in refusing to give an instruction asked by appellant, and in giving it in modified form—the modified instruction, with the words of the modification italicized, being as follows: "If you believe from the evidence that, *through the negligence of the deceased,* the tool deceased was grinding was caught between the rest and the wheel, thereby causing it to break, then your verdict should be for the defendant." The original instruction, we think, was rightly refused. The facts hypothetically stated were not sufficient to entitle the defendant to a verdict. It may have been that the catching of the tool referred to was caused by the excessive speed; and hence the modification was not improper. Other instructions were given on the point which were at least as favorable to the defendant as it was entitled to demand.

Judgment and order affirmed.