[Civ. No. 1228.    Third Appellate District.    January 14, 1915.]

RHODA R. SLAUGHTER, as Administratrix of the Estate of George V. Slaughter, Deceased, Respondent, v. GOLDBERG, BOWEN & CO. (a Corporation), Defendant and Appellant; RANSOME–CRUMMEY CO., (a Corporation), Defendant.

ACTION FOR DAMAGES FOR DEATH—NEGLIGENCE—RIGHT OF ADMINISTRATOR TO SUE.—That an action for death is statutory which the personal representative of the deceased is permitted to bring merely as a statutory trustee for the benefit of heirs and that in the absence of heirs no action lies, is well settled.

ID.—INSUFFICIENCY OF COMPLAINT—FAILURE TO ALLEGE EXISTENCE OF HEIRS.—It is equally well settled that the existence of heirs is an essential element in a cause of action for death and it must be alleged in the complaint, failing in which no cause of action is stated.

ID.—FAILURE OF COMPLAINT TO SHOW HEIRS—TRIAL WITHOUT OBJECTION TO EVIDENCE—WAIVER.—In such case, although the complaint failed to show the existence of any heirs, where the plaintiff testified, without objection, that the deceased was her son; that she had a husband, the father of the deceased; that deceased, at the time of his death was contributing his earnings to the support of his parents and for several years prior thereto had been doing so, and many other facts as to his relationship to the family, and the trial proceeded in all respects as though the pleadings sufficiently presented the issue as to there being heirs and precisely as it would had the complaint contained the omitted allegation, the omission of this allegation of the complaint was cured.

ID.—GENERAL DEMURRER—INSUFFICIENCY OF TO APPRISE PLAINTIFF OF DEFECT.—In such a case a general demurrer to the complaint was insufficient to apprise plaintiff of the defect and relieve defendant from the necessity of objecting to the evidence.

ID.—COLLISION BETWEEN BICYCLE RIDER AND DELIVERY WAGON—DUTY OF DRIVER OF WAGON TO TURN TO THE RIGHT OF CENTER OF HIGHWAY.—In such an action for damages for the death of the plaintiff's intestate while riding a bicycle along a public street from being thrown beneath the wheels of a heavily loaded wagon caused by a collision between the bicycle and a delivery wagon traveling in an opposite direction and on the wrong side of the street, there was no error in instructing the jury that "if the driver of the delivery wagon could have turned seasonably to the right of the center of the highway so as to pass the other wagon without interference, and did not do so, he should have done so, so far as the rights of the decedent were concerned, and was guilty of negligence toward deceased, if said deceased was then riding on the right of the center of the road,"

and that "The rule that when vehicles meet, the driver of each must turn seasonably to the right of the center of the highway, applies when a wagon meets a bicycle. If the deceased was riding in front of the Ransome-Crummey wagon, and the driver of the Goldberg-Bowen wagon could have turned to the right of the center of the highway when he met him, and did not do so, that in itself was negligence on the part of said driver." Such instructions were not open to the objection that they permitted of no excuse or extenuation by defendant, and in effect told the jury to find the issue of negligence against the defendant, it not being denied that the defendant's wagon was on the left of the center of the street.

ID.—VEHICLES MEETING ON ROAD—DUTY OF DRIVERS.—Such instructions should be construed as saying (what the statute lays down as the rule) that when vehicles meet, the drivers of each must turn seasonably to the right of the center of the highway, so as to pass without interference, and by the instructions the court did not intend to say that the failure of defendant's driver to turn to the right determined all questions of negligence against it.

ID.—VIOLATION OF STATUTE—NEGLIGENCE.—In such a case an instruction that a violation of a statutory requirement constitutes negligence is correct.

ID.—WAGONS TRAVELING ON THE SAME SIDE OF THE STREET—MEETING AS DEFINED BY STATUTE—GROSS NEGLIGENCE.—In such a case where defendant, Goldberg-Bowen Co.'s wagon was traveling on the same side of the street at a fast gait, in close proximity to and facing the Ransome-Crummey wagon and the bicycle ridden by the deceased, the vehicles were "meeting" in the sense of the statute; and where the circumstances were such that the jury were authorized to believe that defendant Goldberg-Bowen Co.'s driver saw deceased and the Ransome-Crummey wagon as he approached them, it was gross negligence for him not to have seen him, he being directly in front of them and on the side of the street which called for vigilance and circumspection on his part.

ID.—WHEN INSTRUCTIONS NOT CONFLICTING.—In such a case there is no necessary conflict between said instructions and instructions proposed by the defendant which informed the jury that the mere fact of passing on the left did not constitute negligence, that a driver may use any part of the street when necessary, and, whether on the one side or the other, the question of negligence depends upon the circumstances, as the question was still left for the jury whether or not the driver could have turned to the right or was negligent in not turning to the right or in failing to stop when he saw the position of the deceased.

ID.—PROXIMATE CAUSE OF INJURY.—In such a case the instructions were not open to the objection that they did not take into account that the question of the proximate cause of the injury was involved, where full instructions upon the question of defendant's alleged

negligence being the proximate cause of the injury were given, as no single instruction could embody all the law.

ID.—RIGHT TO PRESUME WAGON WOULD PASS TO THE EAST.—There was no error in such a case in instructing the jury that "if the deceased was behind the Ransome-Crummey wagon and saw the Goldberg-Bowen wagon coming, before it reached the Ransome-Crummey wagon, he had a right to presume that the Goldberg-Bowen wagon would pass to the east of the Ransome-Crummey wagon, provided it was possible for it to do so; and if he himself attempted to pass the Ransome-Crummey wagon on the west, he is not chargeable with negligence unless he knew, or should have known, that the driver of the Goldberg-Bowen wagon would not or could not turn to the right. And if deceased was in front of the Ransome-Crummey horses, and saw the Goldberg-Bowen wagon coming, he had a right to presume that the Goldberg-Bowen wagon would pass to the east of him.

ID.—IMMINENT DANGER—DETERMINATION OF COURSE TO PURSUE.—In such a case there was no error in instructing the jury that "When a person is in imminent danger, he is not called upon to exercise that intelligence and judgment he would be expected to exercise were he not in danger. So if a party in imminent danger has two ways open to him, but has not the time to stop and investigate, and determine which is the right or safe way, and which is the wrong or unsafe way, his choosing the latter is not, under the circumstances, negligence on his part. So, if you should find from the evidence in the case that deceased found himself in imminent danger or had reasonable ground to believe that he was in such danger, and had not time to stop and consider and determine the better course to pursue, then you are instructed that his choosing to turn one way instead of the other in such emergency was not negligence on his part even though in so doing he may have ridden right against the approaching team or wagon instead of away from it."

ID.—PLACING SELF IN DANGER—RIGHT OF RECOVERY—PROXIMATE CAUSE OF INJURY—QUESTION FOR JURY.—Although the deceased might have been in a dangerous position through his own fault, the rule in this state does not preclude a recovery on his part, it being for the jury to decide, in view of all the circumstances, at whose door must rest the charge of the proximate cause for the injury.

ID.—ALLEGATION OF CONTRIBUTORY NEGLIGENCE—NEGLIGENCE PRESUP-POSED—INSTRUCTIONS—LAST CLEAR CHANCE DOCTRINE.—In such a case where the defendant alleged contributory negligence of the deceased this presupposed negligence on the defendant's part; and it is held that the instructions of the court upon the last clear chance doctrine were within the issues made by the pleadings.

ID.—VERDICT—WHEN NOT EXCESSIVE.—It is held that under the facts of the present case a verdict of ten thousand dollars was not exces-sive.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Goodfellow, Eells, Moore & Orrick, for Appellant.

Henry H. Hart, and Aitken & Aitken for Respondent.

CHIPMAN, P. J.—The action is for damages resulting from the death of plaintiff's intestate, alleged to have been caused by defendants' negligence.

The complaint alleges the appointment of the plaintiff as administratrix of the estate of the deceased; that, on August 5, 1910, the date of the accident, the deceased was riding his bicycle along a public street in the city of Oakland; that, at the same time, the defendants' wagons were being driven along the same street; and that the driver of the Goldberg, Bowen & Co. wagon "so carelessly and negligently drove and managed said horses and wagon that by reason of his carelessness and negligence said horses and wagon struck said George V. Slaughter and his bicycle and overthrew the same, throwing the said George V. Slaughter directly in front of the above mentioned wagon driven by said employee of the Ransome-Crummey Company, and said employee of said defendant Ransome-Crummey Company so carelessly drove and managed said wagon and draught animals driven by him that the wheels of said wagon so driven by him passed over the body of the said George V. Slaughter."

It is then alleged that, by reason of the matters just stated, the plaintiff, as administratrix, has sustained damages in the sum of twenty-five thousand dollars; and the prayer is that judgment be awarded her for such amount.

Both defendants demurred generally and defendant Goldberg, Bowen & Co. demurred specially on the sole ground that it cannot be determined from the complaint "in what defendant's alleged negligence consisted." The demurrers were overruled and defendant Goldberg, Bowen & Co. answered denying the averments of negligence and alleging that plaintiff's intestate was guilty of contributory negligence.

26 Cal. App.—21

Inasmuch as no verdict was rendered against defendant Ransome-Crummey Co., reference hereinafter will be to defendant Goldberg, Bowen & Co. unless otherwise noted.

The accident occurred at about 10 o'clock on the morning of August 5, 1910, in the city of Oakland. On that morning a heavily loaded wagon belonging to defendant, Ransome-Crummey Co., was being driven slowly in a southern direction—toward Oakland—along the westerly, or right-hand side of San Pablo Avenue, and eight or ten feet from the curb, as testified by the driver of the wagon. A double-track street railroad runs along the middle of this avenue. The distance from this westerly car track to the curb is twenty-four feet two inches; the avenue is sixty-four feet wide and is crossed by Isabella Street and Athens Street, between which, on San Pablo Avenue, the block is two hundred and thirty feet long. The driver of the Ransome wagon testified that the accident occurred about one hundred and fifty feet from Athens Street. No other team and no cars were passing at the time and no obstructions of any kind prevented a clear view for the entire block on San Pablo Avenue.

Witness Annie Krohne testified that she was standing in front of her store on the west side of San Pablo Avenue and about forty feet north from the corner of Isabella Street and was looking north toward Athens Street; that she saw the deceased riding on a bicycle about sixty or seventy feet from her and about four feet away from the curb and ahead of the Ransome wagon; that, at the same time, defendant's wagon passed her going north near the curb—she thought closer to the curb than the Ransome wagon and "on the same side of the street that the Ransome-Crummey wagon and the boy were. . . . When the Goldberg, Bowen Company wagon passed me going in the direction of the Ransome-Crummey wagon, it went pretty fast. The horses were galloping." She testified: "When the Goldberg, Bowen Company wagon reached the place where the boy was riding, I saw one of the Goldberg-Bowen horses touch his bicycle. That threw the boy off under the wheels of the Ransome-Crummey wagon, I saw one of the wheels of the Ransome-Crummey wagon pass over the boy's chest. I ran into the store then."

Witness Emma Bankhead was standing about twenty-five feet south of Isabella Street in front of a plumbing shop on San Pablo Avenue. She testified that the Goldberg-Bowen

wagon came along San Pablo Avenue, turned into Isabella Street and shortly afterwards came back into San Pablo Avenue and "went north on the west side of the street . . . up toward Athens Street. Q. Which side of San Pablo Street was it? A. On the wrong side. On the west. The Ransome-Crummey wagon was going toward Oakland on the west side of the street; on the same side with the Goldberg-Bowen Company wagon. I also saw a boy riding a bicycle on San Pablo. He was a little in front of the horses of the Ransome-Crummey wagon riding at a moderate speed toward Oakland, going in the same direction as the Ransome-Crummey wagon. The Goldberg-Bowen Company's wagon hit his wheel. I could not say what part of the wagon hit him." She testified that she could not say whether it was the horses or the wagon hit the boy but that the bicycle was struck and she saw the boy fall. She testified: "When I saw the Goldberg-Bowen wagon going up San Pablo Avenue, after it came back from Isabella Street, just before the boy was struck it was going fast."

The theory of the defendant was that after its wagon had come alongside of the Ransome wagon, between it and the curb, the boy suddenly came from behind the Ransome wagon and tried to pass between the two wagons but became confused and ran his wheel into the defendant's wagon and was thrown under the Ransome wagon. This theory was supported by the testimony of defendant's driver, Bert Call, and some other witnesses but manifestly was not accepted by the jury. Call testified: "I first saw the boy when the two wagons were about opposite each other. When I had come in between the Ransome company wagon. I didn't see him when I was out by the track." He was asked how far away from him the boy was when he first saw him. "A. When he was about one hundred feet behind the wagon." He testified: "He was coming up on the pedals—riding on the pedals, with his head down. He would look down a while, while he was riding, off from the seat, and he would look to see where he was going. When I turned to see how close to the curb I was getting I was going to stop right there; all of a sudden I seen him dart from behind the Ransome-Crummey wagon; and of course when I saw him coming, I saw he was confused. He ran into my wagon and it threw him under the Ransome-Crummey wagon. I turned around just in time to see the

wheel pass over his body." He testified that he had a delivery to make on Athens Street and he went to the westerly side of San Pablo Avenue on his way because he had an inquiry to make on his own account at a furniture store on that side of the avenue. The jury, no doubt, believed that the driver saw the deceased as he testified but that it was when the deceased was riding his wheel in advance of and not behind the Ransome-Crummey wagon.

The issues of fact were tried by a jury and a general verdict rendered in favor of plaintiff against defendant, assessing the damage at ten thousand dollars, and judgment was accordingly entered. A motion for a new trial was denied and the appeal is from the judgment and order.

Passing the special demurrer without discussion, appellant urges with much confidence that the general demurrer should have been sustained for the reason "that the complaint utterly failed to show the existence of any heirs." That the action for death is statutory, that the personal representative of the deceased is permitted to bring the action merely as a statutory trustee for the benefit of the heirs, and that in the absence of heirs no action lies, is not disputed and is well settled. (*Munro* v. *Pacific Coast Dredging etc., Co.*, 84 Cal. 522, [18 Am. St. Rep. 248, 24 Pac. 303]; *Redfield* v. *Oakland etc. Ry. Co.*, 110 Cal. 290, [42 Pac. 822, 1063]; *Salmon* v. *Rathjens,* 152 Cal. 294, [92 Pac. 733].) It is equally well settled that the existence of heirs is an essential element in the cause of action for death and must be alleged in the complaint, failing in which no cause of action would be stated. (*Webster* v. *Norwegian Mfg. Co.,* 137 Cal. 399, [92 Am. St. Rep. 181, 70 Pac. 276]; *Ruiz* v. *Santa Barbara etc. Co.,* 164 Cal. 188, [128 Pac. 330].) Appellant not only relies upon these propositions but it contends that without such averments the complaint will not sustain a judgment in favor of plaintiff, and, furthermore, that the defect is not cured by the verdict.

Respondent replies: 1. That the complaint, aided by the answer, was sufficient, for the reason that defendant denied that plaintiff had sustained damage "as administratrix *or otherwise,*" thus raising an issue as to plaintiff's having been damaged personally as an heir; that, as no one but an heir can sustain damage, an allegation of damage to plaintiff necessarily implies that plaintiff is an heir, in the absence of a special demurrer; 2. That the admission of evidence without

objection cured the omission of the allegation. Upon this latter point, plaintiff testified without objection that deceased was her son; that she had a husband, father of deceased; that deceased, at the time of his death, was contributing of his earnings to the support of his parents and for several years prior thereto had been doing so, and many other facts as to his relationship to the family.

It seems to us that respondent's second point in reply to appellant's contention must be sustained.   We have examined the California cases on which appellant relies and find that in none of them does it appear that proof of the omitted essential averment was made without objection.   They are cases in which the question arose on demurrer, plaintiff declining to amend and judgment against him on the demurrer; or cases of appeal on the judgment-roll alone; or on judgment upon the verdict where the evidence upon which the verdict was rendered was not brought up or did not affirmatively show that proof of the omitted averment was made without objection.   In some of the cases the rule is stated as broadly as contended for but an examination will show that the facts did not warrant it.   The cases cited in the opening brief and relied upon by defendant are: *Buckman* v. *Hatch,* 139 Cal. 55, [72 Pac. 445] ; *Bane* v. *Peerman,* 125 Cal. 220, [57 Pac. 885] ; *Hurley* v. *Ryan,* 119 Cal. 71, [51 Pac. 20] ; *Cameron* v. *Ah Quong,* 8 Cal. App. 312, [96 Pac. 1025] ; *Carpenter* v. *Sibley,* 153 Cal. 215, [126 Am. St. Rep. 77, 15 Ann. Cas. 484, 15 L. R. A. (N. S.) 1143, 94 Pac. 879] ; *Wells-Fargo Co.* v. *McCarthy,* 5 Cal. App. 301, [90 Pac. 203] ; *Burke* v. *Maguire,* 154 Cal. 456, [98 Pac. 21] ; *Alexander* v. *McDow,* 108 Cal. 25, [41 Pac. 24].

We do not feel disposed to examine the numerous cases cited by the parties.   It seems to us that the reformed procedure would receive a decided shock if a defendant should be permitted to stand by and without objection allow an issue to be tried as though properly presented by the pleadings and on appeal escape the consequences by claiming that the complaint failed to present such issue.   If there ever was a case where section 475 of the Code of Civil Procedure was intended to apply this, it seems to us, is one.   In *Texas & Pac. Ry. Co.* v. *Lacey,* 185 Fed. 226, [107 C. C. A. 332], the action was similar to the one here and the statute gave the right to the parents only if the deceased left no widow or minor

children. The complaint was silent as to the existence of heirs, as is the present complaint. After stating that an amendment would no doubt have been allowed in the lower court had the objection been there presented, the court said: "The point, if it occurred to counsel—and it probably did not—was held in ambush till the case reached this court, when it came out in the open. We think it too late to present that defense. . . . If there were no statutes or local decisions to sustain the view we would hold, nevertheless, that a defendant would not be permitted to successfully urge the alleged defect in this court after entering a general denial and trying the case on the merits in the lower court and, having failed to suggest the alleged defect in that court."

Nor do we think it can be said that the general demurrer sufficiently apprised plaintiff of the defect and relieved defendant from the necessity of objecting to the evidence. In *City of Henderson* v. *Sizemore,* 31 Ky. Law Rep. 1134, [104 S. W. 722], it was said: "It would be trifling with justice to hold at this late stage of the proceedings that the judgment should be reversed for the error in failing to sustain a demurrer to the petition. Especially in view of section 134 of the Civil Code of Practice providing that the court must in every stage of any action disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party." (See *Abner Doble Co.* v. *Keystone etc. Co.,* 145 Cal. 490, 495, [78 Pac. 1050]; *Carroll* v. *Briggs,* 138 Cal. 452, 455, [71 Pac. 501].) In the case here the trial proceeded in all respects as though the pleadings sufficiently presented the issue as to there being heirs and precisely as it would had the complaint contained the allegation which it is insisted it should have contained. Why, then, should the case go back to have the complaint amended, as it is manifest that the proofs would be the same? How can it be said that defendant has sustained "substantial injury and that a different result would have been probable if such error . . . or defect . . . had not occurred"? (Code Civ. Proc., sec. 475; Const. art. VI, sec. 4½, as recently amended.)

Appellant claims error in the giving of plaintiff's instructions numbered XXIII and XXIV on the "law of the road":

"If the driver of the Goldberg-Bowen wagon could have turned seasonably to the right of the center of the highway so as to pass the Ransome-Crummey wagon without interference,

and did not do so, he should have done so, so far as the rights
of decedent were concerned; and was guilty of negligence
toward George V. Slaughter, the deceased, if said Slaughter
was then riding on the right of the center of the road.

"The rule that when vehicles meet, the driver of each must
turn seasonably to the right of the center of the highway
applies when a wagon meets a bicycle. If the deceased was
riding in front of the Ransome-Crummey wagon, and the
driver of the Goldberg-Bowen wagon could have turned to
the right of the center of the highway when he met him, and
did not do so, that in itself was negligence on the part of said
driver."

It is contended that these instructions permitted of no ex-
cuse or extenuation by defendant and "in effect told the jury
to find the issue of negligence against the defendant, for it
was never denied that defendant's wagon was on the left of
the center of the street." We do not think the court intended
to say that under all conceivable circumstances it would be
negligence for a vehicle meeting another to turn to the left
or omit to turn to the right. Circumstances might be such,
as appellant well suggests, when this might cause collision
rather than avoid it. What the court intended to say, and
what the jury was authorized to interpret the court as saying,
was what the statute lays down as the rule—"When vehicles
meet, the drivers of each must turn seasonably to the right of
the center of the highway, so as to pass without interference."
(Pol. Code, sec. 2931.) It was not intended, nor do we think
the jury could have so understood the court, that the failure
of defendant's driver to turn to the right determined all
questions of negligence against defendant. Other instructions
given by the court show plainly that this must be so. Upon
the general proposition that a violation of a statutory require-
ment constitutes negligence the instructions were correct.
Where the plaintiff was injured by a runaway horse, left un-
fastened in the street in violation of an ordinance, it was said
the court might have instructed that the proof established
negligence. (*Siemers* v. *Eisen,* 54 Cal. 418.) It was said, in
*Fenn* v. *Clark,* 11 Cal. App. 79, 81, [103 Pac. 944, 945]:
"It has been repeatedly declared by the supreme court of
this state that the failure to perform a duty imposed by stat-
ute or municipal ordinance constitutes negligence." (See
*Breese* v. *Los Angeles Tr. Co.,* 149 Cal. 131, 139, [5 L. R. A.

(N. S.) 1059, 85 Pac. 152].) Instructions were given upon the question of the alleged contributory negligence of deceased and upon the circumstances immediately attending the accident, showing that all these matters were to be considered by the jury. We do not think there can be any doubt that these vehicles were "meeting" in the sense of the statute. Defendant's wagon was traveling on the same side of the street at a fast gait, in close proximity to and facing the Ransome wagon and the bicycle ridden by deceased. The jury were authorized to believe that defendant's driver saw deceased and the Ransome wagon as he approached them. If he did not see them it was gross negligence not to have seen them, as he was directly in front of them and on the side of the street which called for vigilance and circumspection on his part.

It is contended that the instructions above referred to were in conflict with certain instructions given at defendant's request. If our view of plaintiff's instructions is correct we see no necessary conflict between them and defendant's instructions which informed the jury that the mere fact of passing on the left did not constitute negligence; that a driver may use any part of the street when necessary and, whether on one side or the other, the question of negligence depends on the circumstances. These directions were favorable to defendant but the question was still left with the jury whether or not the driver could have turned to the right or was negligent in not turning to the right or in failing to do so or to stop when he saw the position of deceased. It will be observed that plaintiff's instructions relate, at least in part, to defendant's duty toward deceased whose position, as the evidence warranted the jury in finding, was in the space between the Ransome wagon and the curb or in front of it as defendant approached. As to defendant's criticism that the instructions did not take into account that the question of proximate cause of the injury was involved, this may be said—no single instruction can embody all the law. There were full instructions upon the question of defendant's alleged negligence being the proximate cause of the injury. (*Stein* v. *United Railroads,* 159 Cal. 368, 372, [113 Pac. 663].)

Error is predicated of the following instruction numbered plaintiff's XXV: "If the deceased was behind the Ransome-Crummey wagon and saw the Goldberg-Bowen wagon coming before it reached the Ransome-Crummey wagon, he had a

right to presume that the Goldberg-Bowen wagon would pass to the east of the Ransome-Crummey wagon, provided it was possible for it to do so; and if he himself attempted to pass the Ransome-Crummey wagon on the west, he is not chargeable with negligence unless he knew, or should have known, that the driver of the Goldberg-Bowen wagon would not or could not turn to the right. And if deceased was in front of the Ransome-Crummey horses, and saw the Goldberg-Bowen wagon coming, he had a right to presume that the Goldberg-Bowen wagon would pass to the east of him.''

It is claimed that, upon the authority of *Hutson* v. *Southern etc. Ry. Co.*, 150 Cal. 701, [89 Pac. 1093], this instruction requires a reversal of the judgment. The objection is to the last paragraph of the instruction. We do not see that the case cited is at all controlling in this case. It deals with the case of a driver of a team of horses approaching a railroad track and his duty to stop and listen even though he does not hear a bell ringing or see the coming cars. The instruction objected to is no more than a statement that the deceased had a right to presume that defendant's driver would obey the law, especially under the circumstances shown, that the deceased was rightfully pursuing his course in a position of safety. The rule as applicable to this case is more correctly given in *Medlin* v. *Spazier*, 23 Cal. App. 242, [137 Pac. 1078].)

Error is assigned in giving the following instruction: "Plaintiff's VIII. When a person is in imminent danger, he is not called upon to exercise that intelligence and judgment he would be expected to exercise were he not in danger. So if a party in imminent danger has two ways open to him, but has not the time to stop and investigate, and determine which is the right or safe way, and which is the wrong or unsafe way, his choosing the latter is not, under the circumstances, negligence on his part. So, if you should find from the evidence in the case that deceased found himself in imminent danger or had reasonable ground to believe that he was in such danger, and had not time to stop and consider and determine the better course to pursue, then you are instructed that his choosing to turn one way instead of the other in such emergency was not negligence on his part even though in so doing he may have ridden right against the approaching team or wagon instead of away from it.''

The criticism is that "this rule has no application where the person injured has placed himself in the position of danger; in such case the confusion of mind obviously arises out of his own act."

In *Harrington* v. *Los Angeles etc. Ry. Co.*, 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15], deceased was admittedly negligent in placing himself in a position of danger and such also was the situation as to plaintiff in *Kramm* v. *Stockton Elec. R. Co.*, 3 Cal. App. 615, [86 Pac. 738, 903]; s. c., 22 Cal. App. 737, [136 Pac. 523]. The jury were fully and quite favorably instructed by the court, at defendant's request, upon defendant's theory that deceased "voluntarily placed himself in a point of danger" by riding into the space between the two wagons. The jury, by their verdict, found that this theory was untenable and that deceased was not in a dangerous position through his own fault. But had he been, the rule in this state does not preclude recovery. The jury were to decide, in view of all the circumstances, at whose door must rest the charge of proximate cause for the injury.

It is further contended that the instructions upon the last clear chance doctrine were outside the issues and therefore erroneous. Under the allegations of negligence found in the complaint and the issues raised by the answer it was proper, as was done, to inquire into all the circumstances surrounding the accident. Defendant alleged contributory negligence of deceased which presupposed negligence of defendant. (*Linforth* v. *San Francisco Gas etc. Co.*, 156 Cal. 58, 66, [19 Ann. Cas. 1230, 103 Pac. 320].) The evidence, we think, shows that the instruction was proper. Besides, we cannot see that it was harmful.

There are two other assignments of error which we do not deem of sufficient importance to require notice.

It is finally contended that the verdict of ten thousand dollars was excessive. Mrs. Slaughter, mother of deceased, and plaintiff, testified that he was twenty-three years old at the time of his death; that he "graduated from the grammar school when he was fifteen years old," at Marysville; that he worked after school in the canneries and during vacations; was for two years janitor of the Episcopal church, worked in a furniture store; agent for the *Tribune* after they moved to Oakland. "He was my main support." She was asked when

he began to work and contribute to the support of the family. "A. Just as soon as he left school, and before he left school, he used to deliver papers after school. When he took the papers after school, it was a small amount monthly, but after he quit school, from sixteen years on, regularly I could depend on, I had a regular salary, because he was an ambitious boy. He always averaged $10.00 and more, never less than $10.00 a week. In the cannery, of course, he used to average about $14.00 or $16.00. The boy's condition of health was fairly well. He was always at home with me. He never was a boy to run around or dissipate or get in bad company. I could depend upon him night and day when he was not at work. He was not married." It was admitted by defendant that, according to the American table of mortality, the expectancy of life of a person 23 years old is 40.2 years.

There is no evidence aside from the amount of the damages, from which it can be inferred that the jury were actuated in the slightest degree by passion, prejudice, or by corrupt motives. The amount in itself is not such as "to suggest at first blush, passion, prejudice, or corruption on the part of the jury." (*Hale* v. *San Bernardino etc. Co.*, 156 Cal. 715, [106 Pac. 84] ; *Bond* v. *United Railroads*, 159 Cal. 270, 286, [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366].) This subject has been so frequently discussed by our appellate courts and under so many different conditions of facts that it would be difficult to throw any additional light upon it. We can discover no rule of law which would warrant our holding the verdict in the present case to be excessive and we content ourselves with referring to some of the cases, in addition to the two above cited, which we think fully justify our conclusion: *Redfield* v. *Oakland Con. Co.*, 110 Cal. 285, [42 Pac. 822, 1063] ; *Hillebrand* v. *Standard Biscuit Co.*, 139 Cal. 233, [73 Pac. 163] ; *Skelton* v. *Pacific Lumber etc. Co.*, 140 Cal. 507, [74 Pac. 13] ; *Bowen* v. *Sierra Lumber Co.*, 3 Cal. App. 313, [84 Pac. 1010] ; *McGrory* v. *Pacific Elec. Co.*, 22 Cal. App. 671, [136 Pac. 303].

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 13, 1915, and the following opinion then rendered thereon;

THE COURT.—We are asked to grant a rehearing in order that we may reconsider the single question: Did the evidence that deceased left heirs, offered and admitted at the trial without objection, cure the failure to allege the fact in the complaint? Whatever answer to this question may be found in the decisions of our supreme and appellate courts, and it must be admitted that in some of them a negative answer finds support, we are satisfied that the rule should be as we have held. If we have erred appellant has a speedy means of redress by petition for hearing in the supreme court.

Inasmuch as section 4½ of article VI of the constitution, as recently amended, was not referred to in the briefs and its effect in cases of this character has not been passed upon, so far as we are advised, we withdraw the citation and all reference to it as authority for our decision.

The petition is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 15, 1915.