[S. F. No. 10522.   In Bank.—July 25, 1924.]

IDA M. GINOCHIO et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

[1] NEGLIGENCE—ACCIDENTAL DEATH—ACTION BY HEIRS—ADULT SISTER—SECTION 1970, CIVIL CODE—SECTION 377, CODE OF CIVIL PROCEDURE.—An action for damages for death from injuries received while attempting to board a street-car cannot be maintained under section 1970 of the Civil Code where there is no claim that the relation of employer and employee existed between the decedent and the defendant, but such action can be maintained under section 377 of the Code of Civil Procedure by the heirs or personal representatives of the decedent, who have suffered pecuniary loss, but an adult sister of the decedent (who left surviving him two minor children) is not an heir in the sense that she is pecuniarily interested in the result of the accident; hence she cannot recover.

[2] ID.—HEIRS—DEFINITION.—The word "heirs" is a technical term and is used to designate the persons who would by the statute succeed to the property of the deceased in case of intestacy.

———

1.  See 8 Cal. Jur. 952.
2.  See 8 Cal. Jur. 965, 973.

[3] ID.—INSUFFICIENCY OF COMPLAINT.—In such an action by an adult sister of the deceased, where the complaint does not allege that plaintiff was an heir of the decedent no cause of action is stated in her favor.

[4] ID. — PLEADING — EVIDENCE. — In such an action, where an allegation in the complaint that the deceased was the sole support of the adult sister and that she was dependent upon him for support (no other facts being pleaded showing what her pecuniary relations were with the decedent, or to what extent she was dependent upon him), is denied by the answer, an issue of fact is raised requiring plaintiff to show her pecuniary damages.

[5] ID—INSTRUCTIONS.—In such a case an instruction with reference to the damages recoverable which could be applicable only to an action brought under the authority of section 1970 of the Civil Code is erroneous and prejudicial.

[6] ID.—ATTEMPT TO BOARD MOVING CAR—INSTRUCTION.—The defendant is entitled in such a case to an instruction to the effect that if the car which the decedent attempted to board was moving so rapidly that it would have constituted negligence to have attempted to board it, or if the circumstances were such that a person of ordinary caution would have been deterred from attempting to board it, the decedent would have been guilty of negligence in making the attempt; but the instruction should not exculpate the operators of the car from any negligence properly attributable to them.

---

4. Necessity and sufficiency of pecuniary loss to beneficiaries and parties plaintiff to statutory action for death, note, **L. R. A.** 1916E, 139. See, also, 8 **Cal. Jur.** 965; 8 **R. C. L.** 809.

6. Boarding moving car or train as contributory negligence, note, 2 **Ann. Cas.** 939. See, also, 4 **Cal. Jur.** 964; 5 **R. C. L.** 36.

(1) 17 **C. J.,** pp. 1207, 1219, secs. 57, 63. (2) 29 **C. J.,** p. 290, sec. 5. (3) 17 **C. J.,** p. 1388, sec. 144. (4) 17 **C. J.,** p. 1301, sec. 161. (5) 17 **C. J.,** p. 1314, sec. 183. (6) 10 **C. J.,** p. 1167, sec. 1526.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. D. A. Cashin, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, and Charles S. Peery and F. A. Devlin, Assistant City Attorneys, for Appellant.

Daniel A. Ryan and Vincent W. Hallinan for Respondents.

SEAWELL, J.—This is an appeal from a judgment awarding plaintiffs twenty thousand dollars as damages for the death of Angelo J. Ginochio, caused by injuries received while attempting to board a moving street-car operated by defendant city. The case has been twice tried and each time a jury found for plaintiffs. The judgment entered upon the first verdict was reversed by the district court of appeal, first district, second division, because of erroneous instructions given as to the duty a carrier owes to a passenger transferring from one line to another (*Ginochio* v. *City and County of San Francisco,* 57 Cal. App. 150 [206 Pac. 763]). Upon a retrial the judgment here complained of was entered. This latest appeal was taken to this court, and was again transferred to the district court of appeal, first district, second division. The judgment was reversed upon this appeal on the ground that the undisputed facts did not show negligence on the part of the defendant or its agents (42 Cal. App. Dec. 395). A hearing was granted by this court for the reason that we deemed it advisable to consider two assignments of error, neither of which was noticed by the district court of appeal, for the reason, doubtless, that it considered the ground upon which it placed its order amply sufficient to justify a reversal. The two assignments of error which we will notice consist in giving instruction No. XVII at the request of respondent, and the court's refusal to give instruction No. II, requested by appellant.

We feel entirely satisfied that the trial court committed prejudicial error in giving instruction No. XVII, and also that the defendant was entitled to have the jury instructed substantially in the language of instruction No. II.

The decedent, who was entitled to be carried on a Market Street car by right of a transfer issued to him, received the injuries from which he died while attempting to board a westerly or out-bound car operated by defendant city on Market Street, at about 2 o'clock Sunday afternoon, April 18, 1920.

At the time of the injury he was of the age of about thirty-nine years, in good health, and the father of two motherless children, aged fourteen and sixteen years, respectively. He was a worker in leather and was earning thirty dollars per week. On the afternoon in question he boarded a Van Ness Avenue car, southerly bound, and ob-

tained a transfer to the Market Street line with the intention of visiting friends. Market Street runs in an easterly and westerly direction and Van Ness Avenue and Eleventh Street each run in a northerly and southerly direction. Van Ness Avenue has its southerly terminus in Market Street and Eleventh Street has its northerly terminus in said Market Street. Neither crosses Market Street. The distance on Market Street between the points of entrance of said respective streets into Market Street, measured from the westerly boundary line of Eleventh Street, if projected, and the easterly boundary of Van Ness Avenue, is proximately 140 feet. A large bronze monument erected to the memory of the Spanish-American War Veterans stands near the center of Van Ness Avenue as it debouches into Market Street. Paralleling the northerly boundary of Market Street and adjacent to the monument which affords a physical barrier of protection, a safety zone of considerable length is delineated upon the street for the protection of transfer passengers alighting from the Van Ness Avenue street-cars, and also for initial passengers intending to take passage on out-bound cars. A broad line painted white commonly called a "check-stop" extends across the bed of defendant's Market Street track at a point about 160 feet east from said safety station and on a line with the easterly property line of Eleventh Street if extended. Check-stops are marked on the streets primarily for the guidance of the employees of the railway system. There is nothing upon the ground to indicate that it is intended as a safety zone or that it is a regular stopping place to receive or discharge passengers. Cars moving northerly over Eleventh Street cross Market Street near this point and continue in a diagonal direction into Van Ness Avenue. It is the rule of the street-car system that all cars crossing intersecting lines must slow down and if the traffic or situation requires it, stop, before crossing. It is true that passengers are discharged from and received into the cars at the check-stop line if they manifest such a desire. The properly appointed safety zone, however, is adjacent to said monument and approximately 160 feet from the point above described.

On the afternoon in question a fire in lower Market Street had caused a blockade of traffic on Market Street. The car which decedent attempted to board was the first to move

westerly after the blockade had been raised. It was crowded with passengers, a number of whom were standing on the platform, and it is the claim of the motorman that the sign "Take next car" was displayed. A large number of persons were assembled at the monument safety zone awaiting transportation. Decedent, upon alighting from the Van Ness Avenue car, immediately walked away from the safety zone and took a position on the sidewalk of Market Street at a point not definitely fixed where he awaited the arrival of said car. His purpose in making this change was doubtless to avoid the throng which had gathered at the monument and to gain an advantage in boarding the car. He had formerly been a conductor in the service of the United Railways system. The conductor testified that at the time his car was approaching and passing the check-stop mark, five or six persons were standing in the street, which is made quite narrow by reason of four tracks being laid upon it, near the car track. The speed of the car had been reduced from twenty or twenty-five miles an hour to eight or ten miles before it reached the point in question. Both the conductor and motorman testified that the car was not to be stopped at this point, but it was the intention to pass by and stop at the regular safety zone. The conductor testified that he leaned away from his car and signaled to the five or six persons standing near the check-stop mark by a motion of the hand to cross over to the safety zone. No other person than the decedent attempted to board the car. The motorman testified that he saw no one standing near the railway track, but that a small group of people were standing at the edge of the sidewalk. A passing automobile commanded his attention. No one testified that the decedent was among the small group standing in the street near the car track. It is the testimony of the conductor that he first saw the decedent when he beckoned the passengers to cross to the safety zone. The decedent was then running toward the car coming from behind and making rather a diagonal course to the rear of said car. When first seen he was six or eight feet from the car. He succeeded in getting his feet upon the steps, but whether he was successful in grasping the stanchion no one was able to definitely state. At any rate, he fell backward, striking the back part of his head upon the hard street pavement, was picked up unconscious,

taken to a hospital, and died the second day thereafter. Respondents claim that the car slowed down to an almost imperceptible speed and as the decedent stepped upon the platform it speeded up suddenly or moved forward with a jerk sufficiently violent to unloose decedent's grasp from the stanchion and that this constituted the proximate cause of the death of decedent. This, of course, is the vital question in the case. On the other hand, it is the claim of appellant that deceased had not been accepted as a passenger and the circumstances of the situation were not sufficient to justify a reasonable person to believe that the slowing down of the speed of the car to eight or ten miles per hour was to be regarded as an invitation to persons to board a car moving at such a rate of speed; further, that a positive warning had been given that the car would not come to a stop, and, finally, that the car was not operated in a negligent manner in any respect.

Notwithstanding the fact that the car contained more than a hundred passengers, some of whom were riding upon the platform, and there were a number of persons within close proximity of the decedent at the time of his injury, not one of such number appeared as a witness at either trial.

But two witnesses to the accident were called on behalf of the respondents and a like number on behalf of appellant. The principal witness called by respondents had been a fellow-passenger with the decedent on the Van Ness Avenue car. Upon alighting from the car this witness stopped at the safety zone station with the intention of boarding the same car which decedent attempted to board. He was, therefore, directly in front of the approaching car, 160 feet from it, and was not in as good a position to judge of its speed as were those who viewed it as a passing car or who were actually passengers thereon. This witness fixed the speed of the car at the rate of two miles per hour at the time decedent stepped upon the platform and testified that at that instant the car moved forward with a jerk. He was contradicted in this respect by the testimony given by him at the coroner's inquest shortly after the accident. His testimony upon cross-examination was left in an unsatisfactory state and is in confusion with respect to important particulars and does not appear to accord with the physical situation. The other witness called for respondents was

standing on the outer edge of the sidewalk near the check-stop mark at the time of the accident intending to take the car next following. He testified that the decedent left the sidewalk and went in the direction of the approaching car as though to board it and succeeded in placing his feet upon the step, but he was unable to say whether or not decedent secured a hold upon the stanchion or to otherwise describe his position upon the step. While he testified that the car had slowed down very considerably he would not say that its speed was increased with a jerk but he thought it was sent forward with sudden and quickened speed. At the inquest he testified that there was nothing unusual in the movement of the car.

Upon the state of the testimony as presented by the record, which we have carefully examined, we feel that the judgment should not be allowed to stand, and certainly not in the face of an erroneous instruction which could have had none other effect than to have augmented the damages assessed by the jury.

Instruction XVII reads as follows:

"If your verdict be in favor of the plaintiffs in this case it must be for such a sum as will compensate them for all the damage proximately caused them by the negligence, if any, of the defendant. In arriving at this sum you are entitled to take into consideration any damage that may be shown by the evidence to have been suffered by the plaintiffs by reason of the death of Angelo Ginochio. In estimating this damage, you have the right to take into consideration the loss of the society, comfort, support, services and protection suffered by the plaintiffs through the loss of their father and brother, the probable pecuniary benefits to be derived by them, the expense to which they have been put for medical and funeral services for him, and any other evidence that may show pecuniary loss suffered by them through his death. You may take into consideration the expectancy of life of Angelo Ginochio at the time of his death, and his habits of life, whether industrious or otherwise, as may be shown by the evidence. The amount of your verdict, however, if you render one in favor of the plaintiffs, must be reasonable under all the circumstances of the case."

The action could only have been maintained under section 377 of the Code of Civil Procedure. The above instruction had no applicability to section 377, and could be relevant only to an action brought under the authority of section 1970 of the Civil Code, which provides for the allowance of indemnity to an employee from an employer for injuries received in consequence of the ordinary risk of the business in which he is employed under the circumstances therein described. In such cases it is provided that ''the personal representatives of such employee shall have a right of action therefor against such employer, and may recover damages in respect therefor, for and on behalf, and for the benefit of the widow, children, dependent parents and dependent brothers and sisters, in order of precedence as herein stated, but not more than one action shall be brought for such recovery.'' No claim is here made that the relation of employer and employee existed between the decedent and appellant. [1] Therefore, the action cannot be maintained under section 1970 of the Civil Code. The action must be relegated, therefore, to the provisions of section 377 of the Code of Civil Procedure, which provides that ''when the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case, may be just.'' Under the foregoing section, supported by authority from this and many other states, it is quite clear that the adult sister of the decedent (who left surviving him two minor children of his body) is not an heir in the sense that she is pecuniarily interested in the result of the action. In the *Estate of Watts,* 179 Cal. 20 [175 Pac. 415], this court in defining the word ''heirs'' said: ''The word 'heirs' is a technical term, and is used to designate 'the person who would by the statute succeed to the real estate (or, in California, estate of any kind) in case of intestacy.' *Clarke* v. *Cordis,* 4 Allen (Mass.), 466, 480. 'The heirs of a person,' said this court in *Hochstein* v. *Berghauser,* 123 Cal. 681, 687 [56 Pac. 547, 549, 'are those whom the law appoints to succeed to

his estate in case he dies without disposing of it by will.'
This is the ordinary meaning of the word, used in an in-
strument of any kind.   Where a will makes a gift to the
'heirs' of a person, section 1334 adds the sanction of statu-
tory definition to the interpretation.''

[2]   ''The word heirs means the persons who would be en-
titled to succeed at his death to his estate in case of intestacy,
by virtue of our statutes relative to succession.''   (*Estate of
Wilson*, 184 Cal. 63 [193 Pac. 581].)   The rule of law
which refutes the claim that the sister suffered a pecuniary
loss by the death of her brother is thus stated in *Estate of
Riccomi*, 185 Cal. 458, 461 [14 A. L. R. 509, 197 Pac. 97,
98] : ''It is the *pecuniary loss* to an heir by reason of the
death that is recoverable, and that only.   (See generally
on this subject, *Simoneau* v. *Pacific Electric Ry. Co.*, 159
Cal. 494, 505, 509 [115 Pac. 320].)   It follows, inevitably,
that there can be no substantial recovery on account of any
heir who has not suffered substantial pecuniary injury.
This was in effect decided by this court in *Burk* v. *Arcata
etc. R. R. Co.*, 125 Cal. 364 [73 Am. St. Rep. 52, 57 Pac.
1065] ; where the syllabi correctly state the questions decided
as follows:

'' 'In an action for a death brought by the adult collateral
heirs of the deceased, the mere fact that they are such heirs
does not tend to show pecuniary damage; and in the absence
of other proof tending to show actual damages or at least,
probable loss, resulting to them from the death, the jury
should be instructed that their recovery must be limited to
nominal damages.'

'' 'Mere speculative or conjectural possibilities of benefits
to the parties complaining are not a proper basis for an
estimate of damages resulting from a death.'

''In the light afforded by the views expressed in our de-
cisions, it is obvious that the distribution among 'heirs' of
damages recovered by the statutory trustee must be upon the
basis of the pecuniary loss of each, rather than upon his
rights under our succession statutes with regard to property
constituting the estate left by the decedent.   How perfectly
absurd it would appear to be to hold that where the whole
amount of a recovery is given solely on account of the pe-
cuniary injury to the surviving wife, one-half thereof must
go to a surviving father or mother or brother or sister of

decedent who has suffered no pecuniary injury whatever. Yet such would be the effect of appellant's construction of the section. Her contention is based almost solely on the use of the word 'heirs,' and the meaning of that word as used in the law of this state. Appellant is undoubtedly right in her claim as to the meaning of the word 'heirs.' It denotes, as said in *Redfield* v. *Oakland etc. Co.*, 110 Cal. 277, 290 [42 Pac. 822, 825], all 'those who are capable of inheriting from the deceased person' under our statutes of succession, or, as said in *Estate of Watts*, 179 Cal. 20, 22 [175 Pac. 415], 'the persons who would by the statute succeed to the real estate [or in California estate of any kind] in case of intestacy.' But, as said in the Redfield case, *supra,* 'The recovery is for the injury inflicted upon the plaintiffs personally, and not for injuries inflicted upon her [the deceased]; and the word 'heirs' in the statute is intended to *limit the right of recovery* to a class of persons who, because of their relations to the deceased, are supposed to be injured by her death.' (Italics are ours.) In other words, the plain design of the statute is to give solely to the members of a certain class the opportunity to recover damages for such pecuniary loss as they had suffered by reason of the death of the decedent, and to recompense, in so far as the law can do so, each of such class who has suffered pecuniary loss." (See *Ruiz* v. *Santa Barbara Gas etc. Co.*, 164 Cal. 188 [128 Pac. 330]; *Gonsalves* v. *Petaluma & Santa Rosa Ry. Co.*, 173 Cal. 264 [159 Pac. 724]; *Taylor* v. *Albion Lumber Co.*, 176 Cal. 347 [L. R. A. 1918B, 185, 168 Pac. 348].)

It is the claim of respondents that inasmuch as the appellant demurred generally to the complaint but failed to demur specially on the ground that there was a defect or misjoinder of parties plaintiff, such defect or misjoinder appearing upon the face of the complaint, it should be estopped from raising the point for the first time in this court, citing *O'Callaghan* v. *Bode*, 84 Cal. 489 [24 Pac. 269]; *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318 [147 Pac. 90]; *Kippen* v. *Ollasson*, 136 Cal. 640 [69 Pac. 293]; *Bailey* v. *Prime Western Co.*, 83 Kan. 230 [109 Pac. 791]; *El Paso & N. E. Ry. Co.* v. *Gutierrez* (Tex. Civ.), 111 S. W. 159; *St. Louis S. W. Ry. Co.* v. *Henson*, 58 Fed. 531 [7 C. C. A. 349].

We do not understand why the complaint was not de-
murred to on the ground of defect or misjoinder of parties
plaintiff.   [3]   No cause of action is stated in favor of the
sister, Ida M. Ginochio.   The allegations of the complaint
show that she was not an heir.   The defect was permitted to
go through two trials without attack by demurrer and with-
out any objection being made at the trial.   The only allega-
tion of the complaint, however, attempting to bring the sister
into the action was met with denials by the answer.   [4]
The complaint alleges: ''That the said Angelo J. Ginochio
was the sole support of the plaintiff, Ida M. Ginochio,
and that she was dependent upon him for her support;
. . . ''   No other facts are pleaded showing what her pecu-
niary relations were with decedent or to what extent she
was dependent upon him.   The answer denies on informa-
tion and belief ''that the said Angelo J. Ginochio was the
sole or only support of the plaintiff, Ida M. Ginochio, and
denies that she was dependent upon him for her support,
or otherwise. . . . ''   This denial raised an issue of fact
and if the issue was necessary to her cause of action she
failed to sustain the burden cast upon her by showing what
pecuniary damages she had sustained by the death of her
brother, if any.   The only evidence found in the record is
the following: ''Q. What relation did he [Angelo J. Gin-
ochio] bear to you, other than a sister at that time?   A.
His wife died and left two little children, the youngest one
a baby two months old, and I was working, and he asked me
if I would give up my work and keep house for him and
his children and he would keep me because he wanted the
children to be raised with him and not put away in a home.
Q. When was that?   A. That was about twelve years ago.''
She further stated that she had kept house for him about
ten years.   He brought his money home to her every Satur-
day and she gave him change for his needs and presumably
the balance would go for household expenses.   She received
no wages and had been formerly employed in some capacity
not stated but very commendably quit it to take the place,
so far as she could, of a mother.   Whatever change that was
wrought in her life was brought about many years prior to
the death of the brother.   The children being the recognized
heirs of the decedent are the only persons legally or com-
pensably injured.   Therefore, whatever sum the jury

awarded to the sister is not only without warrant of law but also without evidentiary support. [5] The instruction complained of was given at the request of respondents and of course appellant had no opportunity to object to it until after the damage had been done. It is clearly a misstatement of the law on an important issue and it cannot be said that it did not influence the jury to assess a greater sum than it would have assessed had it not been given.

The refused instruction was as follows:

[6] "If the decedent attempted to board a moving car he may or may not be guilty of contributory negligence according to all the circumstances of the case, but I instruct you that a person attempting to board a moving car assumes all the risk arising from the fact that the car was moving and if decedent was injured and died from injuries he received solely by reason of the fact that he negligently and carelessly attempted to board a moving car, then and in that case plaintiff cannot recover and your verdict must be for the defendant."

Appellant was entitled to have the jury instructed upon the principle of law contained in the proposed instruction. While this is so, the proposed instruction is open to criticism. It does not set forth the principle of law which it was offered to illustrate either as elaborately or as clearly as it should be stated. No doubt all that was intended thereby was to tell the jury that if the car was moving so rapidly that it would have constituted negligence to have attempted to board it, or if the circumstances were such that a person of ordinary caution would have been deterred from attempting to board it, in such case the plaintiff would have been guilty of negligence in making the attempt. The instruction should not exculpate the operators of the car from any negligence properly attributable to them. *Graff* v. *United Railroads*, 178 Cal. 171 [172 Pac. 603], is not an authority in conflict with anything we have said here.

Judgment reversed.

Richards, J., Waste, J., Shenk, J., Myers, C. J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.