[Civ. No. 1345.   Third Appellate District.—June 21, 1915.]

EDWARD BOYLE, as Administrator of the Estate of Patrick O'Donnell, Deceased, Appellant, v. COAST IMPROVEMENT COMPANY (a Corporation), et al., Respondents.

Action for Damages—Negligence—Death of Employee—Pleading—Defective Complaint—Waiver of Objections.—In an action for damages for the death of an employee of one of the defendants resulting from injuries received by him while in a trench into which a large water pipe was being lowered, and then forced into a tunnel, the latter movement being caused by what is described by certain witnesses as the "home pull," whereby the pipe was carried into the tunnel, where the complaint was obnoxious to the objection that it was ambiguous and uncertain, not alleging the character of the negligence specifically enough, but evidence was offered that it was necessary and customary to give the deceased warning just before the "home pull" was given and that the usual warning was not given him prior to the shunting of the pipe, which it is claimed caused his injuries, no objection being made to the evidence, except on the usual and general grounds that no proper foundation had been laid or that the questions were leading, and counsel for the defendants on cross-examination having gone into the question apparently upon the assumption that the issue was raised or tendered by the plead-

ings, the objections to the evidence were insufficient and its admission cured the defects in the complaint.

Id.—Motion for Nonsuit—Rule.—On a motion for nonsuit every favorable inference, fairly deducible, and every favorable presumption fairly arising from the evidence produced must be considered in favor of the plaintiff. Where the evidence is fairly susceptible of two constructions or if any of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. All the evidence in favor of the plaintiff must be taken as true and if contradictory evidence has been given, it must be disregarded. If there is any substantial evidence tending to prove in favor of plaintiff the facts necessary to make out his case, he is entitled to have the case go to the jury for a verdict on the merits. All that the plaintiff is required to show, to successfully combat the motion for a nonsuit, on the close of his case, is that he has introduced proof sufficient to make out a *prima facie* case by the allegations of his complaint.

Id.—Erroneous Nonsuit—Prima Facie Case.—Where there was testimony that it was essential and customary to safeguard the deceased against injury in the position in which his duties as an employee of the defendants placed him, for the foreman of the construction work to give him warning just prior to the performance of the act of forcibly sending the pipe underneath the tunnel by means of the "home pull," and that on the particular occasion of the accident no such warning was given, the necessary inference is that the neglect of the foreman to give such warning was the direct cause of the injuries sustained by the deceased, and plaintiff having made out a *prima facie* case of culpable negligence against the defendants, it was error to grant a nonsuit.

Id.—Evidence—Burden of Proof—Negligence of Deceased.—There is no presumption that the deceased was negligent or that the accident and consequent injuries were proximately caused solely by his own negligence, or that by his own act he contributed in any manner or degree thereto. The rule in this regard is that, where the plaintiff's own testimony does not show that his own negligence was the sole proximate cause of the damages complained of, the burden rests upon the defendant to show, as a matter of defense, that the injury would not have been inflicted but for the plaintiff's own negligence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Henry C. Gesford, Judge presiding.

The facts are stated in the opinion of the court.

John C. Quinlan, and Hamilton A. Bauer, for Appellant.

Randolph V. Whiting, and A. E. Cooley, for Respondents.

HART, J.—This is an action by the administrator of the estate of Patrick O'Donnell, deceased, to recover as damages the sum of fifteen thousand dollars for the alleged wrongful and negligent act of the defendants in causing the death of the plaintiff's intestate.

The charging part of the complaint reads: "That, on the 14th day of December, 1911, and at the same time and place, defendants, through their agents, servants and employees, were operating a derrick or hoist for the purpose of lowering a water pipe by means of a chain into the trench hereinbefore mentioned in which said Patrick O'Donnell was engaged in digging; that on said date and at said time and place and through the carelessness and negligence of the defendants in the operation of said hereinbefore mentioned hoist or derrick, the pipe which was being lowered by defendants, its agents, servants, and employees, was permitted to swing on the chain connected with said hoist so that said pipe struck without any warning whatever said Patrick O'Donnell while he was engaged in his work in the trench hereinbefore mentioned, inflicting serious and violent injuries upon his head, which resulted in his death within a few hours' time."

A demurrer upon both general and special grounds was interposed to the complaint by the defendants and overruled by the court.

The facts, gathered from the evidence, generally stated, are these: The Coast Improvement Company, a corporation, was, in the year 1911, engaged in the performance of a contract between it and the city of San Francisco providing for the construction of an auxiliary water system for fire protection for said city. In the execution of the terms of said contract the said defendant, at the time of the accident whereby the plaintiff's intestate lost his life, was engaged in laying a water pipe across Market Street at a point where Van Ness Avenue intersects with or runs into said street, and for that purpose had caused to be dug a ditch or trench in or under Market Street. This trench was about thirty feet in length, three feet in width and seven feet in depth. The first six feet of said trench was open or without cover, the purpose of that condition being to admit air and light into the tunnel. By means of this open space entrance into and exit from the trench were effected. For a distance of twelve feet the trench was bridged or covered in such manner as to allow the

passage of vehicles over the same.   From that point on to the end of the trench, a distance of approximately fourteen feet, the trench was open and it was into this part of the ditch that the pipes which were being laid were lowered.

At the time of the accident the work of laying the pipes was under the direct supervision of one O'Callaghan, who was the construction company's foreman, and under him were several laborers, who were assisting in the work, among whom was the deceased, and all of whom, with the exception of the latter, were employed on the surface of or above the street and near or alongside the open space of fourteen feet.   The pipes were lowered by means of a derrick and the duties of the laborers referred to (except O'Donnell) were to manipulate the derrick and thus lower the pipes into the trench.

The duties of O'Donnell in the trench were to sponge the pipe—that is, to prevent dirt or other refuse from getting or remaining in the pipe—to level it and adjust it to the pipe already laid.

Running through the center of the trench was a large iron pipe of the Spring Valley Water Company, said pipe being located about six feet from the opening through which the pipes were being lowered into the trench by the construction company and about four feet above the surface of the trench. It was necessary to run the pipes which were being lowered into the trench underneath the Spring Valley pipe.

The method by which the pipes were lowered into the trench was to fasten a chain around the center of the pipe and, by operating the derrick with which the chain was connected, gradually lower it to the bottom of the trench, and, then, the pipe having reached the bottom, and upon a plank or carriage, give a warning to O'Donnell (who was inside the tunnel or covered portion of the trench) and then put on what is described or called the "home pull" or strain, whereby the pipe was driven with sufficient force to carry it underneath the tunnel or to its proper place in the trench.   The warning to O'Donnell was for the purpose of notifying him of the "home pull" and thus enabling him to prepare against collision with or being struck by the pipe.

At the time of the accident the workmen on the surface of the street were engaged in the act of lowering into the trench, by means of the derrick, a twelve-foot cast-iron pipe.   It is difficult to say whether the pipe went into the trench in a ver-

tical position or on an incline, the usual way, the testimony of the witnesses not being clear upon that point. But, in any event, before the pipe had settled at the bottom of the trench or on the carriage used to slide it along, the workmen at the derrick, without (so there is testimony tending to show) any warning having been previously given O'Donnell, who, as seen, was in the trench and within the tunnel and out of sight of the men engaged in lowering, put on the "home pull' or strain with such tremendous force that it sent the pipe into the trench with unusual and violent speed. Within two or three minutes thereafter O'Donnell came staggering out of the trench through the six-foot opening, with blood profusely flowing from his ears and nose, and was thereupon and at once removed to a hospital, where, from the effects of a fractured skull, he died within an hour and a half after his removal thereto.

An autoptical examination of the body of the deceased disclosed that he had suffered a basal fracture of the skull and that death was the result of hemorrhage due to such fracture.

There was no other person in the trench at the time of the accident than the deceased, and, manifestly, there was available no testimony disclosing precisely how the accident happened, and consequently none introduced.

The witnesses, Farrington, Mulcahy, and Sweeney, who were at the time and had been for some days previously employed on the work, and whose duties had to do with the hoist or derrick and the lowering of the pipes from the surface of the street into the trench, each testified that it was the general custom, just before the "home pull" was put on, for the foreman to warn or signal the deceased that that act was to be done, but that no such warning was given O'Donnell just immediately preceding the act of shooting the pipe underneath the ditch by the strain or 'home pull" or at any time before the performance of that act.

These witnesses went into the trench immediately after O'Donnell appeared wounded and bleeding, on the surface of the street, and they testified that the pipes—the Spring Valley and the pipe which had just been lowered—had large quantities of blood upon them. They found the hat of O'Donnell lying on the Spring Valley pipe.

At the close of the plaintiff's case the defendants made and the court granted a motion for a nonsuit, and this appeal is

prosecuted by the plaintiff from the judgment entered upon the order granting said motion.

The motion for nonsuit was based upon "the ground that the evidence fails to show any negligence on the part of the Coast Improvement Company as alleged in the complaint herein, and on the further ground that there is no showing that the intestate himself was free from negligence which was the proximate cause of the injury, either contributory to it or the sole cause of the injury, and that there is a total lack of evidence as to how the accident occurred."

It is contended that the complaint does not state a cause of action and that, therefore, the general demurrer thereto should have been sustained. It is to be conceded that the complaint is not a model pleading in an action of this character, but we cannot say that therein a cause of action is not stated, being based upon the proposition that the injuries from the effect of which O'Donnell died were proximately caused by the negligence of the defendants in not giving the deceased the customary warning of the intention to put on the "home pull" just prior to the execution of that act, and so enable him to guard or protect himself against being struck by the pipe, which was thus forcibly driven underneath the tunnel. Obviously, the cause of action thus alleged is defectively stated and is obnoxious to the objection that it is ambiguous and uncertain. But the theory upon which and the manner in which the cause was tried had the effect of curing the defect in the statement of a cause of action, and the same is true even if as far as we are justified in going is to say that only an attempt is made to state a cause of action founded on the negligence referred to, the evidence received without objction supplying those facts which, if alleged, would have made that pleading sufficient to withstand the attack of a general demurrer.

As has been shown, three witnesses produced by the plaintiff testified that it was necessary and customary to give O'Donnell warning just before that act was done that the "home pull" was to be put on and that the usual warning was not given him prior to shunting the pipe which evidently caused the damage underneath the tunnel by the "home pull." No objection was made to this testimony by the defendants, except upon the usual general grounds or either on the ground that a proper foundation had not been laid for it or that the

questions designed to bring out those facts were leading. And counsel for the defendants went into the question upon cross-examination apparently upon the assumption that the issue was raised or tendered by the pleadings.

The objection to the testimony on the general grounds was not sufficient to raise or test the question whether the negligence thus sought to be established was pleaded or made an issue by the pleadings. If counsel were of the opinion that the complaint stated no cause of action, or, if they conceived that the negligence to the proof of which the testimony was directed was not the negligence pleaded and relied upon in the complaint, they should have objected to the evidence upon that specific ground and their failure to do so supplied the deficiency of the complaint in that respect or any omission to allege therein facts essential to the statement of a cause of action.

In the very recent case of *Slaughter, Admx. etc.* v. *Goldberg, Bowen & Co. et al.*, 26 Cal. App. 318, [147 Pac. 90], in which a petition for hearing in the supreme court was denied, this court had occasion to consider and did consider, through the presiding justice, the question now before us. The action was for damages for negligently causing the death of the plaintiff's intestate. The contention of the appellant was that the complaint utterly failed to state a cause of action because it did not appear therefrom that the deceased left any heirs or that there existed heirs in whose behalf alone the action could be maintained. The respondent made two points in reply to that contention, viz.: 1. That the complaint was sufficient because it was aided by the answer in the denial that plaintiff had sustained damage "as administratrix *or otherwise,*" the words, "or otherwise" raising the issue that the plaintiff was damaged as an heir of her intestate; 2. That the admission of evidence without objection cured the omission of the allegation.

After stating the well-settled rules that an action for damages for negligently causing death is statutory, that the personal representative of the deceased is permitted to bring the action merely as a trustee for the benefit of the heirs, that in the absence of heirs no action will lie, and that the existence of heirs *is an essential element* in the cause of action for death and must be stated, failing in which no cause of action would be stated it was there said: "It seems to us that respondent's

second point in reply to appellant's contention must be sustained.   We have examined the California cases on which appellant relies and find that in none of them does it appear that proof of the omitted essential averment was made without objection. . . . It seems to us that the reformed procedure would receive a decided shock if a defendant should be permitted to stand by and without objection allow an issue to be tried as though properly presented by the pleadings and on appeal escape the consequences by claiming that the complaint failed to present such issue. . . . In the case here the trial proceeded in all respects as though the pleadings sufficiently presented the issue as to there being heirs, and precisely as it would had the complaint contained the allegation which it is insisted it should have contained.   Why, then, should the case go back to have the complaint amended, as it is manifest that the proof would be the same.   How can it be said that defendant has sustained 'substantial injury and that a different result would have been probable if such error . . . or defect . . . had not occurred?   (Code Civ. Proc., sec. 475; Const. art. VI, sec., 4½, as recently amended.)''   (See, also, *Ruth* v. *Krone*, 10 Cal. App. 770, 779, [103 Pac. 960].)

There are innumerable other California cases which hold to similar views.   Indeed, the principle as stated and applied in the Slaughter case has often been declared and approved in this state and thus has become so interwoven in our system that it may now well be said to be an elementary rule of practice in California, as, in the interest of justice, it should be in every other jurisdiction.

It now remains to be determined whether the court was justified in granting the motion for a nonsuit.

The rules which must govern in considering and disposing of such a motion have with much frequency been explained and applied in the cases in this state and in none more perspicuously than in *Estate of Arnold*, 147 Cal. 583, [82 Pac. 252], where, speaking through Mr. Justice Shaw, the supreme court declared: ''On a motion for nonsuit every favorable inference, fairly deducible, and every favorable presumption fairly arising from the evidence produced must be considered as facts in favor of the contestants.   Where the evidence is fairly susceptible of two constructions, or if either of any of several inferences may reasonably be made the court must take the view most favorable to the contestants.   All the evidence in

favor of the contestants must be taken as true and if contradictory evidence has been given it must be disregarded. If there is any substantial evidence tending to prove in favor of contestants the facts necessary to make out their case they are entitled to have the case go to the jury for a verdict on the merits." (See, also, *Janin v. London & S. F. Bank*, 92 Cal. 14; [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100] ; *Goldstone v. Merchants' Ice Co.*, 123 Cal. 625, [56 Pac. 776] ; *Bush v. Wood*, 8 Cal. App. 650, [97 Pac. 709] ; *In re Daly*, 15 Cal. App. 330, [114 Pac. 787] ; *Marron v. Marron*, 19 Cal. App. 328, [125 Pac. 914].)

By the authorities mentioned it is thoroughly established that all that the plaintiff is required to show, to successfully combat a motion for a nonsuit on the close of his case, is that he has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint.

Tested by the rules as thus stated, it is plain that the judgment of nonsuit in the case at bar is erroneous.

As has been shown, there is testimony that it was essential and customary, to safeguard the deceased against injury in the position in which his duties as an employee of the defendants placed him, for the foreman of the construction work to give him warning just prior to the performance of the act of forcibly sending the pipe underneath the tunnel by means of the "home pull," and that on the particular occasion of the accident no such warning was given. Although unimportant in the consideration and decision of the motion, it may be remarked that this testimony stands in the record uncontradicted.

The necessary inference from said testimony is that the neglect of the foreman to give said warning was the direct cause of the injuries sustained by the deceased, and thus it is manifest that, when the motion was granted, the plaintiff had made out a *prima facie* case of culpable negligence against the defendants.

As before explained, the evidence does not show just how or in what manner the accident happened or the injuries inflicted upon the deceased were received, except the inference to be drawn from the circumstance that the deceased was struck by the pipe as it was sent with great force into the trench. There is no presumption that the deceased was negligent or that the accident and consequent injuries were proximately caused

solely by his own negligence or that by his own act he contributed in any manner or degree thereto. Nor, as the ground of the motion for nonsuit here implies, was it incumbent upon the plaintiff to show that his intestate "was free from negligence which was the proximate cause of the injury, either contributory to it or the sole cause of the injury." The rule in this regard is that, where the plaintiff's own testimony does not show that his own negligence was the sole proximate cause of the damage complained of, the burden rests upon the defendant to show, as a matter of defense, that the injury would not have been inflicted but for the plaintiff's own negligence. (*Nagle* v. *California etc. R. R. Co.*, 88 Cal. 91, [25 Pac. 1106] ; *Daly* v. *Hinz*, 113 Cal. 366, [45 Pac. 693] ; *George* v. *Los Angeles Ry. Co.*, 126 Cal. 357, [77 Am. St. Rep. 184, 46 L. R. A. 829, 58 Pac. 819] ; *Boone* v. *Oakland Transit Co.*, 139 Cal. 490, [73 Pac. 243] ; *Railroad Company* v. *Gladmon*, 15 Wall. 401, [21 L. Ed. 114] ; *Buesching* v. *St. Louis Gaslight Co.*, 73 Mo. 219, [39 Am. Rep. 503].) Of course, if, as above intimated, the evidence produced by the plaintiff clearly showed that the damage of which he complains was directly and proximately caused solely and wholly through his own negligence, the defendant being in no way shown to have contributed by his negligence to the bringing about of the damage or injury, then a question of law would thus be presented for the decision of the court. But such is not the case here. The evidence presented by the plaintiff does not show that his intestate received his injuries through his own negligence or that by any act of his he contributed thereto.

No question is raised or presented here of the assumption of risk or that the injuries received by the deceased were caused in whole or in part by a want of ordinary or reasonable care of a fellow-servant.

The judgment is reversed and the cause remanded for trial upon the merits, with a suggestion that the plaintiff amend his complaint so that the negligence upon which he relies may be more specifically and clearly stated.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1915.