[Civ. No. 1550.    Third Appellate District.—November 9, 1916.]

## J. C. JONES, Appellant, v. J. L. MAYDEN, Respondent.

CONDITIONAL CONTRACT OF SALE—RECOVERY OF BALANCE DUE—LIABILITY OF DEFENDANT—ERRONEOUS NONSUIT.—In an action for the recovery of the balance due on a conditional contract of sale of an ice machine, it is error to grant a motion for nonsuit at the close of plaintiff's evidence on the ground that the contract was not that of the defendant, but that of a company whose name the defendant signed thereto per his own name, where the body of the contract recited that the defendant was the vendee, and the testimony of the plaintiff disclosed that he dealt with the defendant personally, and that the latter at no time claimed that the company was the purchaser.

ID.—MOTION FOR NONSUIT—CONSTRUCTION OF EVIDENCE.—A motion for a nonsuit admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and upon such a motion the evidence should be interpreted most strongly against the defendant.

APPEAL from a judgment of the Superior Court of Sacramento County.    Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

P. H. Johnson, and John R. Cronin, for Appellant.

Johnson & Lemmon, for Respondent.

CHIPMAN, P. J.—This is an action for the recovery of the balance due on a conditional contract of sale of an ice machine.

At the close of plaintiff's evidence the court granted a motion for nonsuit and entered judgment for defendant. Plaintiff appeals from the judgment.

The contract is pleaded *in haec verba* and its opening paragraph reads as follows:

"It is agreed, between J. C. Jones, the vendor, hereinafter called vendor, and J. L. Mayden, the vendee, hereinafter called vendee, as follows: Said vendor has agreed to sell, and said vendee has agreed to buy the following property, to wit, one ice machine known as the Polar Wave Ice Machine, and equipment for the same as follows'' (description of sundry

parts). Then follow the payments to be made and the various conditions and throughout the contract defendant Mayden is referred to as the only vendee. The attesting clause is as follows: "In witness whereof the vendor and vendee have caused their names to be subscribed hereto on the day and year first above written.

> "J. C. JONES, vendor,
> "SUTTER CANDY CO., vendee,
> "Per J. L. MAYDEN."

It is alleged in the complaint that on the fourteenth day of June, 1915, the said defendant, Mayden, made, executed, and delivered to the plaintiff "the foregoing instrument in writing"; that "plaintiff installed the said machine and apparatus described in said contract on the premises of said defendant, and that defendant failed, neglected, and refused to pay" the price therein agreed to be paid, except the sum of $50, which defendant paid plaintiff. It is alleged that the name "Sutter Candy Co." signed by the defendant to the said contract "was and is a fictitious name under which defendant, J. L. Mayden, was during all the times herein mentioned, and is now doing business, and that said defendant, J. L. Mayden, is now and was during all the times herein mentioned, the sole and only owner of the said 'Sutter Candy Co.' and the only person interested in any way in the business of said 'Sutter Candy Co.' or the carrying on of the same, or in the said contract."

A general and special demurrer was overruled and defendant answered; denied that he executed the said agreement; denied that the plaintiff installed said machine on the premises of defendant, or that he refused to pay the sum demanded, and alleged that he is not indebted to plaintiff under said contract; denied that there is now due and owing plaintiff from defendant on said contract or at all the sum of $535 or any other sum; denied that the name "Sutter Candy Co." signed by defendant to said contract "was and is a fictitious name under which the said defendant, J. L. Mayden, was during all the times mentioned or any other time or at all, or is now doing business"; denied that defendant is the sole owner of said candy company and is the only person interested in its said business, "and denies that the said defendant is the only person interested in said contract"; alleged that said candy company "now is and for some time past has

been and at all the times mentioned in the complaint has been a corporation organized under the laws of the State of California.'' The answer does not allege that said Sutter Candy Co. has any interest in said business or said contract; the averment is that defendant is not the only person interested in said contract.

Plaintiff testified that he installed the machine as called for in the contract at 1011 K Street, Sacramento, where defendant was doing business, and that the machine was used in connection with the business, and that defendant paid $50, the first payment; that no other payments were made.

The contract was introduced in evidence and plaintiff testified that defendant signed it.

A motion was made for a nonsuit, pending which the following testimony was taken:

''The Court: Mr. Jones (plaintiff), you may take the stand. I want to ask some questions about this. Q. You came up here soliciting business, didn't you? A. Yes, sir. Q. How did you come first to meet Mr. Mayden? A. I heard he wanted a machine. Q. And you went to that place, 1009 K Street? A. Yes, sir. Q. And interviewed him? A. No. I asked the soda-water mixer what the owner's name was, and he told me. He said I could come in, and I went in and looked the place over and came back. I told him I would make out a contract, so I made out the contract at home and brought it up to him to sign and he said he could not sign this then, but I could come back after a while, that he had to see a lawyer first. That was 2 o'clock in the afternoon, and I came back at 4; he said he had not seen the lawyer yet, and asked if I could come back at 7. I said yes. So I came back at 7 o'clock at night and he signed the contract, said that he had seen his lawyer, and that the contract was good without the notes. That is the reason I never got the notes. Q. Did he say anything to you about any associates in the business? A. No, sir; never mentioned anything at all. Q. When he came to sign it, 'Sutter Candy Co.' did you make any comment on that, or ask him if that was his own name? A. I never paid much attention to it. I seen it was the Sutter Candy Co., and his name was at the bottom of it. I never asked him any questions about a company. Q. In negotiating with him, did you address him exclusively? A. Yes, sir; I made the contract with him. Q. And he said

nothing about any associates? A. No, sir. The contract was made out on top. Q. He did not say that the company would accept? A. He said he would accept. He never mentioned the company to me whatever. Q. And all his talk was in the first person, was it? A. Yes, sir. Mr. P. H. Johnson: Q. Mr. Jones, did you go to the place of business of Mr. Mayden and try to collect this money afterward? A. Yes, sir. Q. What happened at that time? A. When the machine was installed, he gave me $50, and said give him ten days more to see how the machine would run. Q. Did you go to his place of business to collect any money? A. Yes, sir. Q. Did he offer you any money? A. He offered me $300 at that time. Q. Tell the court just what Mr. Mayden said at that time. A. Mr. Mayden said the machine did not do what he thought it would do, and he didn't think he ought to pay the bill, and I said: 'Well, I didn't guarantee the cabinet at all, but I will put in more pipe and do my share.' I sold it to him pretty near at what it cost me, but I wanted it to be satisfactory to him, the first one I had in this town, so I got some more pipe and after it was over, I come to see him again, and he offered me $300 and told me that was all he would pay me and if I took it to court, he would beat me out of all of it. Q. Did he say he would or the company? A. He would. Q. Did he lay the money down there, $300. A. Yes, sir. Q. And he said if you did not take that, he would beat you out of all of it? A. Beat me out of all of it. So I went to Stockton and hired an attorney. The Court: Is that all, Mr. Johnson? Mr. P. H. Johnson: That is all."

Thereupon, the court took the motion under advisement and subsequently granted it and entered judgment for defendant.

The agreement states that, "It is agreed, between J. C. Jones, the vendor, hereinafter called the vendor, and J. L. Mayden, the vendee, hereinafter called the vendee," that "said vendor has agreed to sell, and said vendee has agreed to buy" the property in question. No mention is made of the Sutter Candy Co. in the agreement, and this name appears only in connection with defendant's signature. The testimony of plaintiff, which we must, under the rule, accept as true, shows that plaintiff was dealing with defendant personally and not with the candy company; that defendant personally made the first payment, and personally offered a

certain sum less than that due under the contract, and personally stated unless accepted he would beat plaintiff out of all of it in the court. He at no time after signing the contract claimed that it was signed by him for the candy company, or that the candy company was the person for plaintiff to look to. In his answer defendant evasively stated that "he was not the only person interested," but did not state who was the interested party. The motion for nonsuit admits the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom, and upon which motion the evidence should be interpreted most strongly against the defendant. Where the evidence is fairly susceptible of two constructions or if any of several inferences may reasonably be made, the court must take the view most favorable to the party opposing the motion. (*O'Connor* v. *Mennie*, 169 Cal. 217, [146 Pac. 674]; *Boyle* v. *Coast Imp. Co.*, 27 Cal. App. 714, [151 Pac. 25].)

The learned trial judge seems to have attached undue significance to the signature of the vendee, and to have given too little heed to the rule we have just stated. If we were to look alone to the contract, the opening paragraph can more safely be taken as showing the intention of the parties than the manner in which the defendant signed the contract. Besides, we have the uncontradicted testimony of the plaintiff that the contract was made between himself and defendant and no other person, and that he was dealing directly with defendant. The payment made by defendant and his offer to settle on a certain basis, and his failure at any time to claim that he was not personally liable, all goes to show that there was ample evidence from which an inference might legitimately have been drawn by the court that this contract was between plaintiff and defendant.

Under such state of the evidence, it was error to grant the nonsuit.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.