[Civ. No. 1934.    Third Appellate District.—July 11, 1919.]

ETHEL JULIA WARD, as Administratrix, etc., Respondent, v. SOUTHERN PACIFIC COMPANY a (Corporation), Appellant.

[1] NEGLIGENCE—ATTEMPT TO AVOID DANGER—INJURY—CONTRIBUTORY NEGLIGENCE.—A foreman may not be charged with contributory negligence because, in seeking to escape the danger from a heavy timber caused to fall toward him through the negligence of the employees under him, he changes his position and brings himself in contact with such timber and consequently loses his life.

[2] ID.—ACTION FOR DEATH—EVIDENCE—VERDICT.—In this action for damages for the death of the husband of the plaintiff through having been struck by a falling timber while engaged in tearing down and removing certain snowsheds along the line of the defendant railroad company, the jury was justified in concluding that death was due to the negligence of the defendant through its servants in violating the orders given by the deceased.

[3] ID.—ALLEGATIONS OF LOSS—SUFFICIENCY OF COMPLAINT.—In an action for damages for the death of the husband of the plaintiff, an allegation that the plaintiff "has been damaged through the negligence of said defendant and by the death of her husband" in a stated sum is a sufficient allegation of pecuniary loss on the part of plaintiff in the absence of objection thereto in the trial court.

[4] ID.—NEGLIGENCE OF WORKMEN—DUTY OF FOREMAN TO ANTICIPATE. A foreman is not required, as a matter of law, to anticipate that workmen employed under him will act negligently, and his right of recovery for injuries received will not be barred by their negligent acts. (Opinion of district court of appeal on denying rehearing.)

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Devlin & Devlin for Appellant.

Hyman Zagoren, Downey, Pullen & Downey and A. M. Seymour for Respondent.

BURNETT, J.—The action was for damages for the death of Joseph G. Ward, the husband of plaintiff, and the jury found a verdict in her favor for the sum of four thousand five hundred dollars. The particular acts of negligence on the part of defendant upon which the action was based are set out in the complaint as follows: "That on and prior to the nineteenth day of May, 1916, the said defendant was engaged in the business of interstate commerce as a common carrier of freight and passengers in the county of Placer, state of California; that at said time said defendant was engaged in tearing down and removing certain snowsheds along its railroad line near Immigrant Gap, in said county; that on said day, and immediately prior thereto, said Joseph G. Ward, deceased, was employed by said defendant as foreman of certain other employees of said defendant who were engaged in said work upon said snowsheds; that on said day there were two other employees of said defendant, whose

true and correct names are unknown to this plaintiff and are therefore styled as John Doe and Richard Roe, who were engaged in throwing certain pieces of timber from the top of said snowsheds to the ground after removing them from said snowsheds; that while engaged in throwing said timber from the snowsheds to the ground as aforesaid, the said employees, John Doe and Richard Roe, so carelessly and negligently conducted themselves as to cause said timber which they were throwing to the ground to fall in an opposite direction from that to which they had been directed to throw it, thereby causing said timber to fall against an upright post, a portion of said snowsheds, causing said upright post to be broken away and knocked loose from the supports which maintained said upright post in an upright position. That immediately prior thereto the said Joseph G. Ward, deceased, had caused a rope to be tied to the upright post last above referred to and had caused said rope to be wound loosely around another upright post, situate about twenty feet, more or less, north of the upright post first hereinabove mentioned; that at the said time last mentioned the said Joseph G. Ward, deceased, instructed and directed another employee of said defendant, whose true and correct name is unknown to the plaintiff and who is therefore styled as Peter Smith, to manage and hold the other end of said rope in such manner as to control the falling of the upright post to a point designated by the said Joseph G. Ward, deceased; that at the time said upright post was broken away and knocked loose from its supports, through the carelessness and negligence of the said John Doe and Richard Roe, as above mentioned, the said Peter Smith so carelessly and negligently conducted himself as to cause said upright post first above mentioned to fall upon the said Joseph G. Ward, deceased, whereby the skull of the said Joseph G. Ward was fractured and death ensued therefrom almost immediately thereafter.'' The claim is thus apparent that two acts of negligence concurred in producing the unfortunate result; one being the careless removal of the timber from the top of the snowshed, and the other the improper use of the rope attached to the upright, which fell against the deceased and caused his death.

The following diagram and reference points will tend to elucidate the situation:

Photograph II.

"REFERENCE POINTS ON PHOTOGRAPH."

A—Main line track.
B—Siding track.
C—Turntable track.
D—Switch.
E—Where Ward ran to when timber started to fall.
F—Upright which fell.
G—Cross-beam which De Neef and Clark rolled off.
H—End of cross-beam where De Neef was working.
I—Upright supporting north end of cross-beam "G."
J—Upright to which Marsh tied rope.
K—Joist upon which De Neef was sitting while rolling off cross-beam "G."
L—End of cross-beam where Clark was working.
M—Where plate broke when upright "F" fell.
O—Where Ward was struck by post.

W—Point where Ward and Marsh were when Ward gave orders to Marsh and Smith.
X—Post around which Smith had taken turn with rope "8" attached to upright "I."
Y—Plate that broke when cross-beam "G" was rolled off.
Z—Where Ward stood before timber fell.
1—End of plate "5" where sawed off flush with cross-beam "G."
2—End of plate "Y" where sawed off flush with cross-beam "G."
3—Joist upon which Clark was sitting while rolling off cross-beam "G."
4—Brace struck by cross-beam "G" in falling.
5—Plate.
6—Upright.
7—Upright.
8—Rope tied by Marsh.

Of the undisputed facts, we may state that the two employees engaged in removing the timber from the top of the snowshed, named Clark and De Neef, at the time of the accident, were using crowbars to detach a beam, sixteen feet in length and weighing seven hundred pounds, from the top of two uprights twenty-two feet from the ground and each upright weighing about four hundred pounds. These uprights and the beam were standing on a north and south line. Clark, seated on a support near the top of the southern upright, was working at the south end of the beam, and

De Neef, similarly situated, was engaged at the north end of the beam.

The case of plaintiff, as to the first instance of negligence, really hinges upon the conduct of De Neef in prying off the northern end of the beam while the southern end was still attached to the southern upright. That this condition existed appears from the testimony of De Neef himself and of one Thomas J. Smith. As to the testimony of the former the record shows the following: "Q. Describe to the jury how the beam was removed in this particular case, how it fell to the ground if it did. A. My end of the beam seemed to go down a little ahead of the other end. Q. Describe what happened after that. A. I believe that—although I am not certain—that it struck the brace, started to strike the brace which is attached to the post and in that way started the post to fall in Ward's direction, or across the track. Q. I understand you to say that your end of the beam was pried off before the other end, is that correct? A. That was evident."

Mr. Smith testified: "The end Mr. De Neef was working on came off at the plate before the other end had—dropped in kind of a diagonal, here it struck on this brace, this small end of that about where the braces were fastened to the posts somewhere in that neighborhood." It may be added that he and other witnesses illustrated their testimony and no doubt made it plainer to the jury by reference to a model of the snowshed, which model was used at the trial and also at the oral argument in this court.

The beam was fastened to the plates and uprights by spikes, and it is a reasonable, if not necessary, inference that De Neef pried off his end of the beam before Clark had loosened his from the plate to which it was spiked. Of course, this was a very important matter. They were engaged in a very dangerous business at best, but the danger to themselves and others would be greatly increased by casting one end of the beam from the uprights while the other was still attached. This would be manifest to the average juror, as indeed to anyone familiar with the fundamental laws of physics and such a simple mechanical contrivance as the snowshed. No doubt Clark and De Neef knew that the safer course—indeed, the only proper course— was to project both ends of the beam from the uprights at

practically the same time. In fact, De Neef testified that Ward told him "to roll them off to lay flatly on the ground." The direction was intended, and was so understood, to mean that the beam was to be rolled off so as to fall in a horizontal position as nearly as possible. In order to accomplish this, Clark and De Neef should have been careful to see that the spikes were removed or, at least, that they were so loosened from both ends that the beam would fall properly. These workmen were only sixteen feet apart, and both could easily ascertain the conditions at the other end of the beam. It also appears from the testimony of De Neef that the beam could have been turned over upon the plates before it was thrown down. Indeed, he testified that it was so turned over, but this is manifestly inaccurate, as the evidence shows that it was still fastened at Clark's end when De Neef threw it off. We think it cannot be said to be an irrational inference from all the circumstances that said workmen were chargeable with the want of due care, either in failing to remove the spikes or in turning the beam to ascertain whether it was clear, before hurling it to the ground. We may not be able to say just why it fell as it did. Probably the jury had no decided opinion as to that, but it was and is a rational conclusion that it would have fallen without causing any injury if the workmen had exercised the ordinary precaution which the peculiar situation demanded.

That the method pursued resulted in the fall of the upright and thereby contributed directly to the death of Ward is hardly open to controversy. The beam swung in the arc of a circle and struck the brace of said upright with such force as to break the plate at the top and to precipitate the heavy timber to the ground. If the beam had been thrown in the usual and safe manner, the probability is—and, of course, these cases must be decided upon probabilities—that it would have fallen clear of the timbers, and Ward would have suffered no injury. He expected it to fall that way and had stationed himself accordingly. However, in consequence of the unusual and dangerous direction taken by the beam, it appeared to him necessary to change his position. Indeed, it is a fair inference from the testimony of Smith and De Neef that the beam started to fall toward Ward, and his action in moving away in the easterly direction would

tend to confirm this inference. It is not to be supposed that he would have taken this step unless he had reason to believe that he would thereby promote his own safety.

[1] Instead of escaping the danger, the result proved, however, that Ward, by changing his place, brought himself in contact with the falling timber and consequently lost his life. But it is entirely plain that the court cannot hold him chargeable with contributory negligence because of the change in his position. As to this, it must be remembered that the burden of proof was upon defendant and that the presumption was and is that he had a justifiable reason for his conduct. This presumption was confirmed by the testimony showing how the upright started to fall. Ward was watching the process, and, seeing the timber falling toward him, what more natural thing than for him to move away from it? The fact that the upright shifted its course was a matter that he could not be supposed to anticipate. In fact, as to this circumstance, we may add, there is evidence in the record justifying the inference that this change was due to an act of one March, an employee of defendant, in tying the rope—marked 8 in the diagram—to the upright directly east of the one that fell. He was given direction by Ward not to tie the rope, but to take a loop around said upright and hold it loosely. The other upright starting to fall in a southerly direction at right angles to this rope would, of course, be subject to its restraining power, and the resultant of the two forces would be the fall of the timber in a southeasterly direction. That seems plain enough, and it constitutes another circumstance tending to justify Ward's conduct, as he had no knowledge that the rope was so tied. Moreover, if necessary, Ward's conduct could be excused by the application of the familiar principle as to the degree of care required of a person suddenly placed in a position of grave peril, but we are entirely satisfied that as to this defense the verdict of the jury is sufficiently supported, not only by the presumptions that naturally attach to the case, but also by a strong and rational inference from all the facts and circumstances revealed by the evidence.

[2] There is, as already suggested, another theory upon which the verdict may be affirmed, regardless of the question whether Clark or De Neef, or both, were guilty of any

negligence. We may, indeed, acquit them of any want of due care in rolling the beam from the uprights, and still there is evidence to justify the conclusion that Ward would have escaped if it had not been for the hidden danger caused by the tying of the rope; that the latter circumstance was a proximate cause of his death, and was due to the negligence of the defendant through its servant in violating the order given by the deceased.

We deem it unnecessary to dwell longer upon the evidence. We may add, however, this reflection, that we have given it anxious attention, and while it has caused us some difficulty, yet no more so than most of this class of cases that we are called upon to consider. Indeed, it seems to us, there is less reason for a reversal here than in a large number of damage suits wherein the judgments have been affirmed.

As to the general aspect of the case, it is not improper to suggest the significance of certain rather striking circumstances disclosed by the record. One of these is the fact that an important witness for plaintiff—and called by her probably from necessity—was under great inducement to make the circumstances appear as unfavorable as possible to her contention. In fact, one theory upon which she relied involved the charge of negligence on the part of said witness, De Neef. His natural desire for vindication was, no doubt, appreciated and properly gauged by the jury. Again, the case seems to have been tried with great care, the rulings were uniformly just, the law was given to the jury with clearness and accuracy, no complaint whatever being made by appellant of the action of the court in any of these respects, and the jury displayed great moderation in awarding only the sum of four thousand five hundred dollars for the death of a strong, capable man in the prime of life.

Of course, these circumstances, of themselves, are not sufficient to justify the verdict, but believing that it is warranted by the evidence, we refer to them as confirmatory of the statement that this case is somewhat unusually free from error.

[3] The only other point made by appellant was suggested for the first time at the oral argument in this court, and that is, that the complaint does not state a cause of action, for the reason that there is no positive allegation of

pecuniary loss on the part of plaintiff occasioned by the death of her husband. The matter is learnedly discussed by the able counsel for appellant, and several cases are cited in support of the contention, the one chiefly relied upon being *Garrett* v. *Louisville & N. R. Co.,* 235 U. S. 308, [59 L. Ed. 242, 35 Sup. Ct. Rep. 32, see, also, Rose's U. S. Notes]. From this decision the following quotation is made: ''Where any fact is necessary to be proved, in order to sustain the plaintiff's right of recovery, the declaration must contain an averment substantially of such fact in order to let in the proof. Every issue must be founded upon some certain point, so that the parties may come prepared with their evidence, and not be taken by surprise and the jury may not be misled by the introduction of various matters (citing cases). *The plaintiff's declaration contains no positive averment of pecuniary loss.* . . . Nor does it set out facts or circumstances adequate to apprise the defendant with reasonable particularity that such loss in fact was suffered. . . . The rights of the defendant must be given effect.''

This and other citations are reviewed by respondent and the peculiar facts in the various decisions are pointed out and distinguished, but we do not feel called upon to report the matter more specifically. It ought to be sufficient, we think, to say that respondent alleged in her complaint ''that the said Ethel Julia Ward has been damaged through the negligence of said defendant and by the death of her said husband in the sum of fifty thousand dollars.'' If that is not equivalent to an averment that she has suffered pecuniary loss by the death of her husband in the sum of fifty thousand dollars, then we must admit that the significance of the language is not apparent to us. At any rate, it is an imperfect allegation of the fact, and when we consider that no such objection was made at the trial, that, on the contrary, appellant denied in the answer that she suffered any damage by the death of her husband and the evidence was introduced upon the theory that the fact was properly in issue, under numerous decisions of this and other courts, the error, if any, is absolutely without prejudice. (*Slaughter* v. *Goldberg-Bowen & Co.,* 26 Cal. App. 318, [147 Pac. 90]; *Boyle* v. *Coast Imp. Co.,* 27 Cal. App. 714, [151 Pac. 25].)

It appears to us that the law requires us to affirm the judgment, and it is so ordered.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 9, 1919, and the following opinion then rendered thereon:

THE COURT.—[4] In its petition for rehearing, appellant emphasizes the point that Ward assumed the risk that was incident to such negligence as caused the accident. The contention is manifestly based upon the assumption that he should have anticipated that De Neef would negligently pry off his end of the beam before the other was loosened. If that is to be held as a matter of law, it seems to us it would sweep away the right of a foreman to recover for any negligence of the workman. The danger of so treating the beam was so obvious that it would not be necessary to caution the man of ordinary intelligence against such conduct, nor do we think it should be anticipated that anyone would be so reckless. We may add, however, that the instruction which was given by Ward as to how the beam should fall would clearly imply that both ends of it were to be loosened before either was projected from the upright.

Appellant thinks an inconsistency appears in the opinion by reason of the statement: "We may not be able to say just why it fell as it did. Probably the jury had no decided opinion as to that." Of course, the statement in the first of these sentences must be true, regardless of the soundness of our opinion as to the merits of the appeal. The second sentence is susceptible of misunderstanding, as it has been misunderstood by the learned counsel. What we had in view was the whole situation, the entire cause of the peculiar direction taken by the beam, and what was said was really in response to various speculations of appellant as to the many circumstances that may have contributed to the result. The statement is not a full and accurate expression of what was intended, clarity being somewhat sacrificed to conciseness.

We still think the jury may not have had a decided opinion as to all these circumstances. But if they believed, as they undoubtedly did, that the negligence of defendant's

servants contributed to the accident, and the evidence supports a finding to that effect, it matters not about other elements such as rusty nails or rotten uprights that may have affected the fall of the beam.

Of course, no opinion can be written or any conclusion announced that cannot be criticized with some show of justification by astute and censorious counsel, but we have given the cause careful consideration, and our judgment is that we should not interfere with the verdict. With that, we are content.

The petition for rehearing is, therefore, denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 8, 1919.

All the Justices concurred.