[Civ. No. 2422.   Third Appellate District.—April 8, 1922.]

## SAUL MORRIS et al., Respondents, v. SIERRA AND SAN FRANCISCO POWER COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—NEGLIGENT MAINTENANCE OF POWER WIRES—BURNING OF PROPERTY—ACTION FOR DAMAGES—PLEADING—EVIDENCE.—In an action against a power company for damages for the burning of plaintiff's store building and contents, a complaint alleging that the fire was caused by the negligent construction and maintenance of defendant's high-power wire, is sufficient to justify a recovery on the theory that defendant's telephone line became overcharged with electricity from its high-power line and was thereby caused to sever and fall on the telegraph line of plaintiff, causing the trouble which resulted in the fire.

[2] ID. — FAILURE TO OBJECT TO EVIDENCE — DEFECTIVE PLEADING CURED.—Conceding that the complaint in such action is deficient in not mentioning the telephone line of defendant, that defect is cured where the evidence showing how the accident occurred is admitted at the trial without objection.

[3] ID. — CLEARANCE OF WIRES AT CROSSINGS — VALIDITY OF ORDER OF RAILROAD COMMISSION.—The regulations contained in Order No. 26 of the state Railroad Commission with respect to telegraph, telephone, and power lines and providing, among other things, that their clearance at crossings with other lines shall be at least two feet, unless suitably supported to prevent contact, are reasonable and in complete harmony with the powers with respect to such utilities which the constitution and the statutes passed in pursuance thereof have invested the commission.

[4] ID. — MAINTENANCE OF WIRES AT PRESCRIBED DISTANCE — JOINT DUTY TO REMOVE.—Where two parties own independent electric lines, each is charged with the duty of so maintaining his line as that the danger to the public of injury flowing from its maintenance will be reduced to the lowest reasonable minimum, and where the maintenance of such wires so owned is within a distance prescribed by the law, it is as much the duty of the one to see that his wire is removed and maintained beyond the interdicted distance from the other wire as it is the duty of the other to do so.

1. Duty to prevent contact of wires carrying electric current, notes, 100 **Am. St. Rep.** 530; 52 **L. R. A.** (**N. S.**) 587.

Liability for injury resulting from charging wire of other company or person, notes, 16 **Ann. Cas.** 1194; **Ann. Cas.** 1918C, 916.

[5] Id.—Breach of Duty by Both—Concurrent Negligence.—Both plaintiff and defendant having been under a duty to see that their respective lines were not within the inhibited distance from each other, and that duty having been overlooked by both, as a direct result of which plaintiff's property was damaged, the damage so inflicted must be held to have been proximately caused by the concurrent negligence of both plaintiff and defendant, and there can be no recovery.

[6] Id.—Prior Installation by Plaintiff—Liability Unaffected.— The fact that plaintiff's telegraph wire was first in point of time to be installed where the two lines crossed did not affect his liability to maintain his line at the required distance from defendant's; neither did that fact render defendant's act in placing its wires in dangerous proximity to plaintiff's wire the proximate cause of the damage to plaintiff's property.

[7] Id. — Inability of Plaintiff to Lower Wire — Interference with Road.—Plaintiff's duty to maintain his telegraph wire at the distance from defendant's telephone wire prescribed by the Railroad Commission was not affected by the fact that he could not lower his wire without interfering with the use of the road which passed underneath.

[8] Id. — Repairs and Improvements Subsequent to Fire — Incompetent Evidence.—In an action for damages for injury to plaintiff's property by fire caused by the close proximity of the telegraph line of plaintiff and the telephone line of defendant, testimony as to the repairs and the improvements made by the defendant upon its wires subsequent to the date of the fire is incompetent; but a ruling of the court admitting such evidence is not erroneous where the only objection urged by counsel for defendant is that the questions eliciting said testimony call for the opinion of the witness.

APPEAL from a judgment of the Superior Court of Tuolumne County. George W. Nicol, Judge. Reversed.

The facts are stated in the opinion of the court.

Chickering & Gregory for Appellant.

Goodfellow, Eells, Moore & Orrick and John B. Curtin for Respondents.

HART, J.—This is an action in tort, and the appeal is by the defendant from a judgment entered upon the verdict of a jury in favor of the plaintiffs for the sum of $8,564.38,

as compensatory reimbursement to the plaintiff, Morris, for damage alleged to have been sustained by him through the alleged negligent act of the defendant in causing the store building, and its contents, of said Morris, at Chinese Camp, Tuolumne County, to be destroyed by fire.

The general facts are: It appears that, in the year 1885, Morris constructed and, down to the time of the fire causing the destruction of the property in question, continuously maintained and operated a telegraph line extending from his store at Chinese Camp to the city of Sonora, via the town of Jamestown, in Tuolumne County, the latter town being situated a short distance only from the town of Chinese Camp. This telegraph line was dedicated to the public service and consisted of one line of poles and a single wire. A number of years (some of the witnesses approximate the number at about fifteen years) after said telegraph line had been established and in operation, the defendant, Power Company, or, rather, its predecessor in interest and grantor, installed in Tuolumne County an electric power line carrying 16,500 volts of electricity. This high-power line extended from what is known as Phoenix Dam, "down past Jamestown, passing through the outskirts" of the last-named place and on to the Rawhide mine, in said county. The power line crossed the state highway at Jamestown, or on the outskirts thereof, and, for a distance of several hundred feet, passed through or over the bottom of a ravine to a point very near to a small body of water known as "Leland's Fish Pond." Said line, between the highway and said pond, was supported by three poles, the distance between which was from 125 to 150 feet. The high-power wires were on cross-arms located at the tops of the poles, and thereunder there had been placed smaller cross-arms carrying two wires (one at each end thereof) used by appellant as a telephone system. At a point between the highway and the "fish-pond," and, about 200 feet distant from the highway, the Morris telegraph line, which, as seen, consisted of but one wire, crossed or passed underneath the power company's wires; and at this point, the wire of the Morris line was held by two poles, so placed that one was at the top of each side of the ravine at about the same elevation, and the span of said line where it crossed underneath the power line was between 250 and 300 feet, being

much longer than the span of the Power Company lines at that point.

On the morning of July 12, 1918, the general merchandise store of the plaintiff, Morris, at Chinese Camp, caught fire, which partially destroyed the building and completely destroyed the stock of merchandise and fixtures contained in said building. Morris carried insurance on the building and stock of goods with his coplaintiff, three different policies, aggregating the sum of $3,200, having been at some time previously to the fire so issued to the said Morris. At this point it may be stated that the plaintiff, Fireman's Fund Insurance Company, upon adjusting the loss, paid to Morris the total amount called for by the three several policies referred to and that said company is in the case here claiming subrogation to such proportion of any rights established herein by the plaintiff, Morris, as is represented by the amount paid by it to Morris under said policies of insurance.

The building in which Morris carried on the merchandise business and which was in part destroyed by the fire in question was made of brick, with iron doors, and of the dimensions of twenty-five feet in width by fifty feet in length. The walls of the building were eighteen inches in thickness. The height of the building was twelve feet, with a four-foot fire wall. The roof was made of dirt and bricks with a tin covering and the windows and the doors had iron shutters. Early in the evening preceding the morning of the fire, Morris personally closed the store by locking the doors. On the morning of the fire, while he was still in bed, his attention in some manner was called to the fact that a fire had broken out in his store and he immediately arose and hastened thereto. He found the doors and windows closed and locked as he had left them the previous evening. He looked through a hole in one of the walls of the building through which letters and other mail were deposited in the store and discovered that the fire was in the north end of the building, in close proximity to the point where the telegraph instrument was located. There was considerable smoke in the building and it was apparent that the fire had already obtained considerable headway. He, with others, attempted to arrest the progress of the fire, but to no purpose.

After the building and contents had been destroyed, Morris, believing that the fire had been caused by the emission of electric sparks from his telegraph instrument and that this was in turn caused by the surcharge of his wire with an unusual voltage of electricity by reason of its contact with some high-power wire, proceeded, with others, to make an inspection of his line. They reached the point where the lines of the defendant and his line crossed each other as above described and there he found that one of the telephone lines of the defendant had been broken, the end of said line falling to the ground and setting the dry weeds thereabouts on fire, burning a space of about thirty or forty feet. His own line had been loosened from its insulation and dropped against a cottonwood tree and there grounded. The theory is that the telephone line of the defendant had, through some cause, come in contact with its high-power line, became overcharged with electrical energy and was thereby caused to sever and fall on the line of the plaintiff, Morris, and so charge it with an unusual voltage, sufficient to cause the trouble at his store which resulted in the fire.

[1]  The first point urged by the defendant is that the verdict cannot be supported by any of the alleged negligent acts set forth in the complaint. This point grows out of the proposition that the complaint nowhere mentions the telephone line and alleges that the cause of the fire was through the negligent construction and maintenance of the defendant's high-power wire, by reason whereof electricity of high and dangerous voltage escaped from the said line and into the telegraph line, thereby causing the fire, etc. We think the complaint sufficiently alleges negligence against the defendant to meet the test of a general demurrer and even the demurrer upon the special grounds urged against it by the defendant. [2]  At any rate, there was no objection at the trial to evidence showing how the accident occurred, and this is itself sufficient to cure the deficiency of the complaint, even if it be conceded that there was any such deficiency in the particular referred to. (*Boyle* v. *Coast Improvement Co.*, 27 Cal. App. 714, 720 [151 Pac. 25] ; *Slaughter, Admx., etc.,* v. *Goldberg, Bowen & Co. et al.*, 26 Cal. App. 318 [147 Pac. 90] ; *Ruth* v. *Krone*, 10 Cal. App. 770, 779 [103 Pac. 960].)

There is no controversy between the parties as to how the fire was caused. Counsel for the defendant, both in their briefs and in their oral argument before this court, expressly admitted that the fire in the Morris store was due to the fact that the indirect contact of the high-power wire of the defendant with the wire of the Morris telegraph line overcharged the latter wire with such a high voltage of electricity as to produce the disastrous result of which complaint is here made. In the oral argument by the attorney for the defendant it was stated: ''The fire occurred in this manner: About three or four miles distant from the point of this crossing at a place known as Sullivan's Creek a crane flew into the high-power wires of the Sierra and San Francisco Power Company. That caused a short circuit in the high-power system, allowing the wires to drop, or at least one, which brought the high-power wire into contact with the telephone wires. By means of the telephone wires the electricity was conducted to the particular crossing where the telephone wires of the Sierra and San Francisco Power Company and the Morris telegraph line came in contact, burning off the telephone wires of the Sierra and San Francisco Power Company, due to the short circuit, and thereby shunting the electricity over the Morris line into the store at Chinese Camp.'' But, while the defendant, through its counsel, makes this admission, and, indeed, has not denied that the fire was caused in the manner indicated by the foregoing statement, nevertheless contends that the plaintiff, Morris, was guilty of negligence which directly contributed to the commission of the alleged wrong for which he here seeks redress. In support of this position the appellant calls attention to the fact that the evidence disclosed that both the poles supporting the telegraph line over the ravine and at the point where the .lines of the defendant crossed the former line were in an oblique position in the ground, and slanting in an opposite direction from each other. As to this, the theory of the appellant was and is that the poles had been driven or moved from a vertical position in which they were originally erected to the slanting position by some external cause, as by a heavy wind or contact of some heavy object therewith and that the effect of the falling over of the poles was to take up the slack of the telegraph line and raise it nearer to or

within a very short distance of the telephone line. It is claimed that this theory is sustained by evidence which tended to show that at the time that the telephone wire of the defendant had been repaired and thus placed in its original condition immediately after the fire occurred, the space between the said wire and the telegraph wire of the plaintiff, Morris, was approximately an inch only. It is hence argued that, the telephone wire being restored to exactly the same condition in which it had always been maintained down to and at the time of the contact which produced the trouble and the evidence failing to show that the telegraph wire was in any other condition than that in which it was at the time the telephone wire was repaired and restored to its original condition, the conclusion is irresistible that, at some time prior to the fire, the slanting of the poles upon which the telegraph wire was strung had caused the slack in said wire to be taken up or the wire itself to be stretched so as to become tense, thereby bringing said wire within the distance of an inch from the telephone wire. There was, however, evidence to the effect that the telegraph poles, at the time of the inspection immediately following the fire, were in a solid position in the ground, as though they were in the same condition as when originally placed there, and, therefore, if the fact of the slanting position of the poles was to be regarded as significant in the determination of the question whether the plaintiff, Morris, was, by reason thereof, guilty of contributory negligence in the maintenance of his line, we would perhaps be required to say that the jury impliedly found, and were justified in so doing, that the poles were erected in slanting positions in the first instance, and that the condition as to said wire at the time of the collision between the two wires which caused the damage was no different from what it had always been.

As to the contact between the wires, the theory of the defendant is, as we have seen, that a crane, while in flight, at a point some three or four miles distant from where the wires in question crossed, attempted to pass between the telephone and the high-power wires, collided therewith and so at the same time came in contact with both and that thus the voltage from the power line was conducted into the telephone wire, causing a short circuit on the former

wire, the result of which was to cause the telephone wire to fall upon and overcharge the telegraph wire of plaintiff and so produce the fire. The testimony of two of the witnesses for the plaintiffs supports this theory, and upon the hypothesis that the cause of the contact between the wires is thus accounted for, counsel for defendant vigorously maintain that the damage resulted from a cause or an act beyond the control of human agency—that is to say, that the damage was entirely due to an act of God.

The plaintiffs contend, however, that, it having been shown that the fire was caused by the contact between the telegraph wire and the high-voltage wire through the telephone wire, the latter two wires belonging to the defendant, a *prima facie* case of negligence was thus established against the latter, and that thus a sufficient case was made to entitle them to a recovery, in the absence of a showing by the defendant that it was not guilty of negligence in the maintenance of its wires which contributed proximately to the damage (*res ipsa loquitur*), and that the verdict is conclusive against the defendant upon any matter of defense it set up or attempted to sustain.

But we may waive further consideration of all the above-stated propositions, since we are of the opinion that the contention of the appellant that the plaintiff was guilty of negligence as a matter of law must be sustained. Indeed, we think it is clear that both the plaintiff, Morris, and the defendant, in the maintenance of their said wires at the point indicated, were equally culpable and likewise guilty of negligence as a matter of law and that such concurring negligence constituted the efficient or proximate cause of the fire and its disastrous results. It appears that there were at the time of the commission of the damage complained of herein and had been for a long time prior thereto authoritative regulations fixing or prescribing the distance which should exist between crossing wires carrying electricity, and which regulations, it incontrovertibly appears from the evidence—indeed, it is admitted—were violated by both said plaintiff and the defendant in the maintenance of their respective wires at the point where the same crossed and where the direct cause of the destruction of the Morris building by fire occurred.

On the 14th of December, 1912, the state Railroad Commission, in the exercise of the powers conferred upon it by several acts of the legislature, adopted what said body designated as its "General Order No. 26," entitled, "Regulations governing clearances and construction at crossings of railroads, street railroads, telegraph, telephone, signal, trolley and power lines, with each other and with streets and public highways; also other overhead and side clearances of railroads, street railroads and wire lines." Section 3 of said order is under the subhead "Telegraph, telephone and signal lines," and provides, among other things, that "Telegraph, telephone and signal lines, at crossings with other telegraph, telephone or signal lines, shall have a minimum clearance, above or below such lines, of 2 feet, unless suitably supported to prevent contact."

We presume it will not be questioned that the legislature in the exercise of the power conferred upon it by the provisions of sections 22 and 23 of article XII of the constitution may rightfully invest the Railroad Commission with plenary power to regulate the manner in which railroad corporations and other public utilities shall maintain and conduct their business and the essential appliances thereof and that said commission may prescribe such regulations with respect to the carrying on of such utilities as may be necessary to safeguard and protect any rights of the public which may be affected thereby. And it will not be doubted that, upon the adoption of such regulations as it is within the legal competence of the Railroad Commission to promulgate with respect to public utilities and the maintenance of the essential equipments . thereof, such regulations immediately acquire the force of law. Indeed, it is so declared by the legislature itself in section 30 of an act of the extra sessions of the legislature of 1911, page 18, entitled, in part: "An act to provide for the organization of the Railroad Commission, to define its powers and duties and the rights, remedies, powers and duties of public utilities," etc. Said section reads:

"Every public utility shall obey and comply with each and every requirement of every order, decision, direction, rule or regulation made or prescribed by the commission in the matters herein specified, or any other matter in any way relating to or affecting its business as a public utility,

and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, rule or regulation by all of its officers, agents and employees.''

[3] Nor can it justly be said that the regulations contained in Order No. 26 with respect to telegraph, telephone, and power lines and the clearances which must be maintained between them where they cross each other are unreasonable or not in complete harmony with the powers with respect to such utilities with which the constitution and the statutes passed in pursuance thereof have invested the Railroad Commission.

Order 26 of the Railroad Commission became effective January 1, 1913, and it was served upon the plaintiff, Morris, according to his own admission, a short time after it was adopted. Morris testified that continuously for some four or five years before the twelfth day of July, 1918, when the fire occurred, there was a distance between his wire and the telephone wire of the defendant at the point where the two wires crossed and where the contact occurred of approximately one foot only. It is true that Morris stated that his measurement of the space between the two wires was not actual, but was based upon his judgment founded on his observation of the wires as he frequently passed along the highway near which the two wires crossed; but there is absolutely no other testimony in the record contradicting this statement or that is inconsistent with it. It is, in fact, the only testimony received which tended to show the distance which was maintained between the telegraph and the telephone wires, and, since it comes from the plaintiff himself, it must be accepted as the established fact in the case that the two wires mentioned were maintained continuously for several years down to and including the time at which the fire occurred at a distance only of one foot apart. Obviously, this was in violation of Order 26, above referred to, prescribing the minimum clearances between telegraph and telephone wires where the same cross each other, in the absence of the equipment of the line with such support as would prevent contact between it and the other wire. That neither the telegraph nor the telephone wire was furnished

with such support is indubitably evidenced by the fact that a contact between the two wires actually occurred.

As to the defendant, it is contended by its counsel that the corporation cannot be held to have been negligent as a matter of law, in that it violated the provision of Order No. 26 of the Railroad Commission with respect to the clearances between telegraph and telephone lines, for this reason: That on the twentieth day of November, 1918, said commission adopted and issued an order extending the time allowed by a previous order within which the defendant should reconstruct its overhead electric lines so as to comply with the requirements of chapter 499, Laws of 1911 (Stats. 1911, p. 1037), as amended by chapter 600, Laws of 1915 (Stats. 1915, p. 1058). There are, however, several answers to this contention. The first is that it does not appear from the record when "Decision 3701" referred to in the order purporting to extend the time to the defendant for the purpose stated was rendered or filed. It will be observed that the order purporting to extend the time and which is in the record before us was issued after the fire occurred, and so far as this record discloses the original order might have been made at some time subsequently to the date of the fire, to wit, July 12, 1918. But, assuming that the courts may take judicial notice of the orders or decisions of the Railroad Commission, and so ascertain and determine when Decision No. 3701 was rendered by said commission, there is still another reply to the contention, viz.: That the order purporting to extend the time within which the defendant was required to reconstruct its electric lines has reference to subdivision (c) of section 1 of the Statute of 1915, which entirely deals with high-power lines and not with telephone and telegraph lines. It follows, therefore, that even if the defendant has, by virtue of the order of extension referred to, until June 30, 1919, within which to reconstruct its power lines in conformity with the requirements of said order and the Statute of 1915, it must, nevertheless, be held that it violated the regulation with respect to the clearance which should exist between telegraph and telephone lines crossing each other by maintaining its telephone wire a distance of one foot only from the telegraph wire of the plaintiff, Morris, and that it was, therefore, equally, with said Morris,

guilty of negligence as a matter of law. This being true, it also follows that it was the concurring negligence of Morris and the defendant which was the efficient, proximate cause of the damage complained of. It may be argued, though, that since the primary cause of the trouble was in the high-voltage wire, the determination of whether the defendant was negligent as a matter of law must rest upon the determination of the question of fact as to the distance between the high-power wire and the telegraph wire, and that so determining the question whether the defendant was or was not negligent we are required to fall back upon the order of the Railroad Commission extending to the defendant further time within which to reconstruct or readjust its power line and that the conclusion therefrom must be that, although the power line was, in violation of the regulations above mentioned, within four feet of the telegraph line, the defendant is immune from the imputation of negligence as a matter of law because of said order. First, we may observe in this connection that if the order purporting to give the defendant further time would have the effect, as probably it would, of relieving it of the imputation of negligence as a matter of law because of maintaining its high-power wire nearer the telegraph wire than is allowed by the regulations of the Railroad Commission, we would not be prepared to say that said order, notwithstanding that it was not specifically granted to the plaintiff, Morris, would not also have the effect of relieving Morris of the imputation of negligence as a matter of law, since it would be a very anomalous, if, indeed, not an unjust, rule which would in effect declare that one of the parties so maintaining wires carrying electricity would, because violating the rule as to clearances between such wires, be guilty of negligence as a matter of law while the other would not. But this question does not arise here. The proposition is this: That the defendant maintained its telephone wire which, as we have seen, does not come within the purview of the order of extension, nearer in proximity to the telegraph line of Morris than is permitted by the regulations of the Railroad Commission with respect to such wires and that the telephone wire of the defendant was the direct instrumentality through which the telegraph wire became surcharged with electricity, thus

causing the fire, and that but for said telephone wire so situated, whatever might have been the remote cause of the fire—that is, the cause of the contact between the wires, even assuming that the cause of the contact was correctly explained upon the theory of the flying crane—no damage would probably have occurred.

The contention that the finding of the jury in favor of the plaintiffs necessarily involved an implied finding that it was the negligence of the defendant which constituted the efficient, proximate cause of the damage, even though both were negligent as a matter of law, and that such finding is conclusive upon this court, is in effect answered by the foregoing views and the conclusion following therefrom. Obviously, if both were guilty of negligence as a matter of law, such negligence being concurrent, the one is equally culpable with the other as to any injury which might proximately result therefrom. In other words, it would be contrary to the plainest precepts of logic to hold that where injury follows from the maintenance of two electric wires in nearer proximity to each other than the law permits, the efficient, proximate cause of such injury may be imputed to one of the parties alone while the other is to be held free from blame. [4] This conclusion follows from the proposition that, as in ordinary cases, where two parties own independent electric lines, each is charged with the duty of so maintaining his line as that the danger to the public of injury flowing from its maintenance will be reduced to the lowest reasonable minimum, so where the maintenance of such wires so owned is within a distance proscribed by the law, it is as much the duty of the one to see that his wire is removed and maintained beyond the interdicted distance from the other wire as it is the duty of the other to do so. [5] In other words, speaking concretely, the duty was no less upon Morris to see that his line was not within the inhibited distance from the defendant's telephone wire as it was the duty of the defendant to see that its telephone wire was not within such distance of the telegraph wire, and, as above suggested, if this duty was overlooked by either or both, necessarily any damage which may directly result from the contact of the two wires, because of the fact of their being in too close proximity to each other under the

law, the damage so inflicted must be held to be proximately caused by the concurrent negligence of the owners of the two wires. (*Dow* v. *Sunset Tel. & Tel. Co.,* 157 Cal. 182 [106 Pac. 587]; *Electric R. Co.* v. *Shelton,* 89 Tenn. 423 [24 Am. St. Rep. 614, 14 S. W. 863]. See, also, *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514 [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663]; *Cook* v. *Miller,* 175 Cal. 497 [166 Pac. 316].) If a third party had suffered damage as the direct result of the contact between the two wires, maintained, as they were, at a distance from each other prohibited by law, no one would be found to say that the proximate cause of such injury was not the concurrent negligence of both the defendant and the plaintiff, Morris. In other words, if the Morris wire had not grounded in the cottonwood tree, but had sent the high voltage to the place in Jamestown or the place in the town of Sonora, where the telegraph line ended, equipped with the usual telegraph instruments, and had set either of the buildings in which it was there maintained on fire, destroying the building, the property of another, it could not be doubted that both the defendant and Morris would be joint tortfeasors and that the party so damaged could maintain an action against them jointly for the injury thus inflicted.

[6]   The fact is also emphasized by the plaintiffs that the telegraph wire was the first in point of time to be installed where the two lines crossed, the contention in effect being that thus the negligence of the defendant, in so placing its wires in dangerous proximity to the telegraph wire, constituted the proximate cause of the damage. This proposition, however, is not only answered by the above considerations, but also by the authorities, among which may be noted *Dow* v. *Sunset Tel. & Tel. Co., supra.* In that case, which involved an action against two distinct corporations for an injury occurring to the plaintiff by reason of a contact between the respective wires of said corporations, due to the nearness in proximity of said wires, the point here suggested was made. Replying thereto the court said: ''It matters not that the telephone wire was the last placed and that this company, therefore, became in the first instance directly responsible for the negligent work. With knowledge upon the part of the appellant that the

wire was thus dangerously close and liable to sag, the continued maintenance of the wires in this position was negligence upon the part of both companies,'' citing a large number of cases from foreign jurisdictions.

In this case, as we have shown, the plaintiff, Morris, had actual knowledge of the existence of the regulations as to the distance between telephone and telegraph wires as prescribed by the Railroad Commission; and it may be, although it is not necessary so to decide here, that he was bound by the regulations, whether he had actual knowledge of their existence or not. As above stated, it was his duty, as it was also that of the defendant, to exercise such vigilant inspection of his wire as would enable him to keep it the legal distance from the wires of the defendant. [7] It is stated, though, in the brief of the respondents that Morris testified that he could not have lowered his telegraph line below the point where it was strung on his poles without interfering with the use of the road which passed through the ravine and under the wires where they crossed each other, and upon this it is in effect contended that Morris cannot be charged with contributory negligence as a matter of law or at all where it was impossible for him to comply with the regulations or remove his wire below where it was stretched on the poles without interfering with the use of said road. In the first place, we remark that we have not been able to find any testimony in the record, either from Morris or any other witness, to the effect that the lowering of the telegraph wire would have materially or at all interfered with the traffic over the road running under said wires at the point where they crossed each other. In the second place, if it be true that such a condition existed and that the telegraph wire could not be lowered without interference with the use of the road, the duty would still be upon Morris to maintain the distance between his wire and that of the defendant in accordance with the regulations prescribed by the Railroad Commission.

There are certain assignments of error involving the action of the court in admitting certain evidence over the objection of the defendant and in the giving of certain instructions and in refusing to allow another which was proposed by the defendant. Under the view that we have

taken of this case, as indicated above, it is hardly necessary to consider these assignments. But we do not deem it amiss, since possibly there may be another trial of the cause, to express the opinion that the refusal to give defendant's proposed instruction No. 10 involved prejudicial error; **[8]** also we think that the testimony which the court allowed the plaintiff, Morris, to give as to the repairs and the improvements made by the defendant upon its wires subsequent to the date of the fire was incompetent. (*Helling* v. *Schindler*, 145 Cal. 303, 311, 312 [78 Pac. 710]; *Sappenfield* v. *Main St. etc. Co.*, 91 Cal. 48 [27 Pac. 590]; *Hager* v. *Southern Pac. Co.*, 98 Cal. 309, 311 [33 Pac. 119]; *Turner* v. *Hearst*, 115 Cal. 394, 401 [47 Pac. 129]; *Limberg* v. *Glenwood*, 127 Cal. 598, 604 [49 L. R. A. 33, 60 Pac. 176]; *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524 [50 Am. Rep. 47].) But the ruling of the court permitting this evidence was not erroneous, for the reason that the only objection urged by counsel for the defendant against it was that the questions eliciting said testimony called for the opinion of the witness. It is true that counsel for the defendant, after the testimony had been received against his objection upon the ground just stated, moved to strike out all the testimony on the ground that the facts and circumstances so testified to occurred after the happening of the fire, but his motion could not avail him, since it was not in accord with the ground upon which he made the objection. At any rate, the ruling denying the motion was not erroneous.

For the foregoing reasons the judgment is reversed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 5, 1922.

All the Justices concurred.